Township of Falls, Bucks County, Appellant, *v.*
Commonwealth of Pennsylvania, Pennsylvania
Labor Relations Board, Appellee.

Argued April 2, 1974, before President Judge Bow-
MAN and Judges CRUMLISH, JR., KRAMER, WILKINSON,
JR., MENCER, ROGERS and BLATT.

*Marcus Manoff,* with him *Richard S. Meyer,* and *Dilworth, Paxson, Kalish, Levy & Coleman,* for appellant.

*James L. Crawford,* Assistant Attorney General, with him *James F. Wildeman,* Assistant Attorney General, and *Francis A. Zulli,* Assistant Attorney General, for appellee.

OPINION BY JUDGE CRUMLISH, JR., July 18, 1974:

This is an appeal from an opinion and order of the Court of Common Pleas of Bucks County affirming in its entirety a final order of the Pennsylvania Labor Relations Board (Board).

On September 25, 1972, the International Brotherhood of Firemen, Oilers, Power House Operators & Maintenance Mechanics, Local 59, AFL-CIO,[1] filed a "Petition for Representation" in which it sought certification as the exclusive bargaining representative of the school crossing guards of Falls Township. On October 26, 1972, the Board issued an Order and Notice of Hearing fixing November 9, 1972, as the date for the hearing on the issues raised in the Petition. At the hearing, the Township of Falls argued for the dismissal

---

[1] It should be noted that this Union also represents the Municipality Highway Workers of Falls Township.

of the Petition. The Board disagreed with the positions advanced by the Township and issued an order directing that an election be held among the guards, as prayed for by the Union. In the election, held March 30, 1973, the Union won a majority of the votes cast and the Board issued a Nisi Order of Certification on April 10, 1973, certifying the Union as the exclusive bargaining representative of the school crossing guards. Timely exceptions were then filed by the Township, which were subsequently argued before and dismissed by the Board. Thereafter the Board issued a Final Order on June 15, 1973, and the Township appealed that order to the Common Pleas Court of Bucks County, which, based upon the record prepared by the Board, affirmed its final order.

Township (Appellant) now appeals to this Court.

Appellant argues citing Section 604(3) of the Public Employe Relations Act, Act of July 23, 1970, P. L. 563, Art. I, as amended, 43 P.S. §1101.604(3), that the Board erred in certifying as union representatives of the school crossing guards a union which also represents non-guard employes of the Township. Section 604(3) provides:

"The Board shall determine the appropriateness of a unit which shall be the public employes unit or a subdivision thereof. In the determining the appropriateness of the unit, the board shall:

"(3) Not permit guards at prisons and mental hospitals, employes directly involved with and necessary to the functioning of the courts of this Commonwealth, *or any individual employed as a guard to enforce against employes and other persons, rules to protect the safety of persons on the employer's premises to be included in any unit with other public employes,* each may form separate homogeneous employe organizations with the proviso that organizations of the latter designated employe group may not be affiliated with any other or-

ganization representing or including as members, persons outside of the organization's classification." (Emphasis supplied.)

Appellant contends that the school crossing guards enforce rules against employes and other persons for the protection of persons on Township property, therefore they are "guards" within the purview of Section 604(3) and cannot be represented by the petitioning union which currently also represents Township highway maintenance employes.

In support of Appellant's argument that school crossing guards are "guards" within Section 604(3), Appellant cites Section 599A of the Second Class Township Code, Act of May 1, 1933, P. L. 103, as amended, 53 P.S. §65599A which states that school guards ". . . have the duty of controlling and directing traffic at or near schools, and who shall be in uniform and shall display a badge or other sign of authority, and who shall be vested with all the power of local police officers . . . ."

Appellant argues that since school crossing guards meet the literal definition of "guards" in Section 604 (3), the Board erred in reviewing cases based on identical language found in Section 9(b)(3) of the Labor Management Relations Act, as amended, 61 Stat. 143, 73 Stat. 525, 542 (1947), 29 U.S.C. §159(b)(3) (LMRA). We are not as convinced as Appellant that the words of Section 604(3) are clear and free from ambiguity, and so may not be disregarded in blind pursuit of the spirit of the statute. Ambiguities may arise not only in the structure of a statute, but also in the application of its phraseology. Therefore, we find that the Board acted properly in reviewing the cases interpreting identical language in the LMRA.

In *McDonnell Aircraft Corporation,* 109 NLRB 967 (1954), the National Labor Relations Board analyzed the language in discussion here, and determined that Congress, by requiring "guards" to be isolated from

other employes in collective bargaining intended to insure an employer that during strikes or labor unrest among his other employes, the employer would have "guards" who could enforce rules for the protection of property and safety of persons without being confronted with a division of loyalty between the employer and dissatisfied fellow union members.

In *Armored Motor Service Company, Inc.,* 106 NLRB 1139 (1953), the National Labor Relations Board held that armored-car guard-drivers were "guards" within the meaning of Section 9(b)(3) of LMRA, because the division of loyalty problem could arise not only as to enforcement of rules against employes of their own employer, but as to the enforcement of rules against employes of the customers hiring their services.

Relying on *Armored Motor Service, supra,* Appellant contends that the divided loyalty problem could arise in the case of school crossing guards. Appellant argues that should a school strike occur, and the school board and township seek to keep open the schools, there is a potential conflict between the school crossing guards "whose job it is to control and direct traffic and to escort children and to protect them along and on the highways and the teachers who may establish a picket line for the purpose of preventing persons, including children and school crossing guards, from approaching or entering school buildings."

We do not read *Armored Motor Service, supra,* as broadly as Appellant. The conflict of loyalty feared in *Armored Motor Service, supra,* would arise if the car-guards entered a customer's establishment involved in a labor dispute, and the striking workers and car-guards were of the same union. We view the potential conflict of loyalty hypothesized by Appellant to be almost non-existent. Surely the Union here certified by the Board, representing Firemen, Oilers & Maintenance Employes,

would rarely if ever be faced during a labor strike with the same union representing striking teachers.

The National Labor Relations Board decision in *Aspen Skiing Corp.*, 140 NLRB 707, No. 76, Par. 12, 478 (1963) can be analogized to the factual situation at hand. In *Aspen, supra,* the employer alleged that certain ski patrolmen whose duty was to aide and protect skiers on employer's premises were "guards" within the meaning of the LMRA. The Board held that since the duties of the patrolmen were directed primarily toward the preservation of the safety of skiers and administering to injured and the potential of divided loyalty was small, they were not "guards."

Here the school crossing guards' main function is to aide the school children on their safe passage to school, hazards which are unrelated to the enforcement of rules against and protection of persons from striking employes of the employer, or from other activity arising out of a labor dispute. Therefore we agree with the Board that school crossing guards are not "guards" within the purview of Section 604(3).

Appellant also argues that although it failed to raise the issue of appropriateness of this particular bargaining unit before the Board and the lower court, it was incumbent upon the Board, in performance of its functions, to elicit information and to determine if certification of this unit was "overfragmentization" as it now alleges, notwithstanding the failure of the parties to raise this issue. Although there may not have been an abundance of information elicited by the Hearing Examiner to aide in the determination of appropriateness of the unit, the Board did consider this question as demonstrated by its discussion of the guards, their job functions, their community of interest, and interchangeability. We agree that this is an appropriate unit and not a subject of the evil of "overfragmentation."

Order affirmed.

500

I respectfully dissent.

Section 599-A of the Second Class Township Code which is located under Article V entitled "Township Officers," subdivision (j) headed "Township Police" and which itself bears the superscription "Special School Police," provides: "Upon request of the board of school directors of the school district of the township, the board of township supervisors, by resolution, may appoint special school police, who shall have the duty of controlling and directing traffic at or near schools, and who shall be in uniform and shall display a badge or other sign of authority, and *who shall be vested with all the power of local police officers.* *Such police* shall serve at the pleasure of the board of township supervisors, and shall not come within the civil service provisions of this act, nor shall they be eligible to join any police pension fund maintained for the township police. Their compensation shall be fixed by the board of township supervisors and they shall be paid by the board of township supervisors, or jointly by the board of township supervisors and the board of school directors in a ratio to be determined by the two boards . . . ." (Emphasis supplied.) Act of May 1, 1933, P. L. 103, *as amended*, 53 P.S. §65599A (Supp. 1974-1975).

It seems clear to me that officers so described are "[p]olicemen . . . employed by a political subdivision" who by the Act of June 24, 1968, P. L. 237, §1, 43 P.S. §217.1 are required to bargain collectively under that Act. As such, they are not public employes subject to the jurisdiction of the Pennsylvania Labor Relations Board under the Public Employe Relations Act. Act of July 23, 1970, P. L. 563, §301(2), 43 P.S. §1101.301(2) (Supp. 1974-1975). This is as it should be. Special school police, primarily responsible for the safety of school children, are essential to the public security and the Legislature wisely provided that their problems with

their public employers should be settled otherwise than by legislation which permits work stoppages.

Judge KRAMER joins in this dissent.