Philadelphia Housing Authority, Petitioner *v.* Commonwealth of Pennsylvania, Pennsylvania Labor Relations Board, Respondent.

Argued September 13, 1983, before President Judge CRUMLISH, JR. and Judges ROGERS, WILLIAMS, JR., CRAIG, MACPHAIL, DOYLE and BARRY.

*Kenneth M. Jarin,* with him *James M. DeLeon* and *Thomas Patrick Kelly,* for petitioner.

*Frayda Kamber,* with her *James L. Crawford,* for respondent.

*Neal Goldstein, Freedman and Lorry, P.C.,* with him *Michael Kleeman,* for intervenor, Housing Police Association.

OPINION BY PRESIDENT JUDGE CRUMLISH, JR., March 21, 1984:

The Philadelphia Housing Authority petitions for review of a Pennsylvania Labor Relations Board order certifying the Housing Police Association as exclusive bargaining representative of the Philadelphia Housing Authority security officers. We reverse and remand.

On August 31, 1981, the Association filed a representation petition with the Board under Act 111[1] to become the exclusive bargaining representatives of the security officers. An election[2] and hearings[3] were held. The Board, concluding that the Authority was a public employer under Act 111[4] and that the security

---

[1] Act of June 24, 1968, P.L. 237, *as amended,* 43 P.S. §217.1 (hereinafter Act 111):

Policemen or firemen employed by a political subdivision of the Commonwealth or by the Commonwealth shall, through labor organizations or other representatives designated by fifty percent or more of such policemen or firemen, have the right to bargain collectively with their public employers concerning the terms and conditions of their employment, including compensation, hours, working conditions, retirement, pensions and other benefits, and shall have the right to an adjustment or settlement of their grievances or disputes in accordance with the terms of this act.

[2] The election was held on October 2, 1981.

[3] The hearing was held on December 22, 1981.

[4] The Board concluded:

It must also be emphasized that the specific question of whether a housing authority is an agency of the Com-

officers were policemen as defined by the Act,[5] certified the Association. The Authority filed various ex-

> monwealth has been answered in the affirmative by both the Pennsylvania Supreme and Commonwealth Courts. In Mitchell v. Chester Housing Authority, 389 Pa. 314, 132 A.2d 873 (1957), the Supreme Court held that because the authority exercised the police powers of the Commonwealth and was "undoubtedly an agency performing governmental functions in such regard," 389 at 321, the board of such authority could not bind successor boards differently constituted to the employment of a confidential executive officer, when such officer was unacceptable to a successor board. In Commonwealth, Department of Justice et al. v. Knox, 29 Pa. Commonwealth Ct. 302, 370 A.2d 1238 (1977), the Commonwealth Court concluded that the Allegheny County Housing Authority was an agency of the Commonwealth and therefore required to make reimbursement payments for unemployment compensation benefits that the Unemployment Compensation Fund paid the former employees of the authority. 370 A.2d at 1240.

These two cases are easily distinguished from the case before us. In *Mitchell*, our Supreme Court simply stated that when a housing authority exercises its police powers, *i.e.*, *public* powers, it would not be subject to all the rules governing *private* business corporations. In *Knox*, this Court held that the Allegheny County Housing Authority was an *agency* of the Commonwealth for the purposes of the Unemployment Compensation Law. The Law, as Act 195, is a broad, all-encompassing statute designed to include as many groups as possible. Act 111, by its very language (Commonwealth or political subdivision) or relative lack of language, is limited in nature. The Board incorrectly cited these two cases as precedent for its decision.

> [5] The Board concluded:
> The law of this Commonwealth is well-settled that job titles or classifications are not necessarily proper criteria for determining employe status. The Board must look to the *actual job functions* of the employes in question when determining issues of employe status and unit appropriateness. See, e.g., School District of the Township of Millcreek v. Millcreek Education Association, 64 Pa. Commonwealth Ct. 389-394, 440 A.2d 673, 675 (1982) ; Township of Falls v. PLRB, 14 Pa. Commonwealth Ct. 944, 322

ceptions to the effect that the security officers and the Authority did not fall within the scope of Act 111 and that, therefore, the bargaining rights of the security officers are governed by Act 195.[6] The Board dismissed these exceptions.

A.2d 412, 415 (1974) ; Ross Township, 6 PPER 140 (1975). We have reviewed all the evidence of record and must agree with the Examiner that the job functions performed by the instant employes are clearly indicative of "police" status. (Emphasis in original.)

[6] Public Employe Relations Act, Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §1101.301(1), (2):

§1101.301   Definitions

As used in this act:

(1) "Public employer" means the Commonwealth of Pennsylvania, its political subdivisions including school districts and any officer, board, commission, agency, authority, or other instrumentality thereof and any nonprofit organization or institution and any charitable, religious, scientific, literary, recreational, health, educational or welfare institution receiving grants or appropriations from local, State or Federal governments but shall not include employers covered or presently subject to coverage under the act of June 1, 1937 (P.L. 1168), as amended, known as the "Pennsylvania Labor Relations Act," the act of July 5, 1935, Public Law 198, 74th Congress, as amended, known as the "National Labor Relations Act."

(2) "Public employe" or "employe" means any individual employed by a public employer but shall not include elected officials, appointees of the Governor with the advice and consent of the Senate as required by law, management level employes, confidential employes, clergymen or other persons in a religious profession, employes or personnel at church offices or facilities when utilized primarily for religious purposes and those employes covered under the act of June 24, 1968 (Act No. 111), entitled "An act specifically authorizing collective bargaining between policemen and firemen and their public employers; providing for arbitration in order to settle disputes, and requiring compliance with collective bargaining agreements and findings of arbitrators."   (Footnotes omitted.)

Bargaining rights under Act 195 and Act 111 are mutually exclusive. *International Union, United Plant Guard Workers of America v. Commonwealth*, 76 Pa. Commonwealth Ct. 150, 463 A.2d 496 (1983). Within the definition of "Public employer" under. Act 195 is included an "authority."[7] Initially, therefore, it is apparent that the Authority security officers fall within the Act 195 parameters. However, Act 111 employees are excepted out of the Act 195 definition by 43 P.S. §1101.301(2), which states in part:

(2) "Public employe" or "employe" means any individual employed by a public employer *but shall not include . . . those employes covered under the act of June 24, 1968 (Act No. 111). . . .* (Emphasis added.)

An Act 111 employer must be either a political subdivision of the Commonwealth or the Commonwealth. We must therefore determine if the Authority fits within this exception and is an employer under Act 111. The Authority is *not* by definition a political subdivision. "Political subdivision" is defined as

[a]ny county, city, borough, incorporated town, township, school district, vocational school district and county institution district.

1 Pa. C.S.A. §1991. The issue is thus limited to whether the Authority[8] is considered the "Commonwealth" for the purposes of Act 111.

---

[7] 43 P.S. §1101.301(1).

[8] Our Supreme Court, in *T & R Printing Co. v. Philadelphia Housing Authority*, 466 Pa. 493, 353 A.2d 800 (1976), held that the language of the Housing Authorities Law does not specifically resolve the issue of whether the Authority is a local or state agency. What must be examined is the legislative intent of the Acts being considered. Under the Housing Authorities Law, Act of May 28,

In this case, a comparison of Acts 195 and 111 demonstrates the legislature's intention to exclude authorities and agencies from Act 111. Acts 195 and 111 must be read in pari materia. *Philadelphia Fire Officers Association v. Pennsylvania Labor Relations Board,* 470 Pa. 550, 369 A.2d 259 (1977). Reading them thusly, it becomes apparent that the legislature purposely limited the scope of public employer under Act 111. That is, while Act 195 includes as public employer "any officer, board, commission, *agency,* or *authority*" (emphasis added), in addition to Commonwealth and Political subdivision, Act 111 limits the scope of public employer to the Commonwealth and political subdivisions of the Commonwealth. Authorities and agencies are purposely excluded from Act 111.[9]

We conclude, therefore, that the Board erred as a matter of law when it determined that the Authority is the "Commonwealth" for the purposes of Act 111.

Reversed and remanded.[10]

---

1937, P.L. 955, *as amended,* 35 P.S. §1542, §1550, a Housing Authority is "[a] public body, corporate and politic, exercising public powers of the Commonwealth *as an agency thereof.* . . ." (Emphasis added.) In that case, the Supreme Court concluded, notwithstanding the above-emphasized language, for the purposes of the Appellate Court Jurisdiction Act, Act of July 31, 1970, P.L. 673, 17 P.S. §211.203 (Supp. 1975), the Philadelphia Housing Authority was a local agency.

[9] We also note that under Section 1550 of the Housing Authorities Law, 35 P.S. §1550, the Authority and the Commonwealth are referred to as separate entities. Section 1550(j) of the Housing Authorities Law states that an authority shall have the power "[t]o arrange with the Commonwealth, its subdivisions and agencies, and any county, city or other municipality of the State, to the extent that it is within the scope of each of their respective functions. . . ."

[10] Having ruled in favor of the Authority, we need not address its other arguments at this time.

148

ORDER

The Pennsylvania Labor Relations Board order in Case No. PF-R-81-54-E, dated July 29, 1982, is reversed and remanded to the Board for proper union certification proceedings for the Philadelphia Housing Authority security officers under the applicable sections of the Public Employe Relations Act, Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. §1101.101.

Judge ROGERS dissents.