94 A.3d 979

LANCASTER COUNTY, Appellee

v.

PENNSYLVANIA LABOR RELATIONS BOARD, Appellant.

American Federation of State, County and Municipal
Employees, District Council 89, AFL–CIO,
Intervenor.

Supreme Court of Pennsylvania.

Argued Sept. 11, 2013.

Decided June 16, 2014.

72

Lauren Miller Hoye, Esq., Amy Louise Rosenberger, Esq., Willig, Williams & Davidson, Philadelphia, for AFSCME District Council 89.

Warren R. Mowery Jr., Esq., John Best Neurohr, Esq., PA Labor Relations Board, for Pennsylvania Labor Relations Board.

Susan Ruth Friedman, Esq., Lancaster, Brad Michael Kushner, Esq., Philadelphia, Stevens & Lee, P.C., for Lancaster County.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, STEVENS, JJ.

## OPINION

Justice TODD.

In this appeal by allowance, we determine whether county prison maintenance employees who supervise inmates constitute "guards at prisons" for purposes of collective bargaining unit placement under the Pennsylvania Employe Relations Act ("PERA"), 43 P.S. § 1101.604(3). For the reasons that follow, we hold that the Commonwealth Court did not apply the proper level of deference in its appellate review of the decision of the Pennsylvania Labor Relations Board ("Board") which concluded that supervisory maintenance employees at issue are "guards at prisons" for purposes of collective bargaining. Thus, we reverse the decision of the Commonwealth Court and reinstate the Board's determination.

The background of this appeal is uncontested. In 1975, the Board certified Intervenor, AFSCME, District Council 89 ("Union") as the exclusive representative of a unit for purposes of collective bargaining which included, *inter alia*, prison security guards, special guards, and transportation, maintenance, and supply employees. Since the unit certification, Appellee Lancaster County ("County") and the Union have been parties to several collective bargaining agreements. However, notwithstanding the Board's certification of maintenance employees in the bargaining unit, the parties have not negotiated over the wages, hours, and conditions of employment for the Maintenance Mechanic I and Maintenance Mechanic II positions.

On November 18, 2009, the County Commissioners adopted a reorganization plan that placed all County maintenance and custodial employees under the centralized Facilities Management Department ("Department"). Two days later, on November 20, 2009, the Union filed with the Board a petition for bargaining unit clarification which sought to include the positions of Maintenance Mechanic I and Maintenance Mechanic II in the unit of prison guards. At the time of this appeal, the County employed one individual in the Maintenance Mechanic I position, and six individuals in the Maintenance Mechanic II position.

After a hearing at which the various duties of Maintenance Mechanics, as well as other employees in the existing bargaining unit, were set forth, the Hearing Examiner for the Board determined, based upon the evidence, as well as prior Board precedent, that Maintenance Mechanics were "guards at prisons" within the meaning of Section 604(3) of PERA (prohibiting guards at prisons and mental hospitals from inclusion in any unit with other public employees). Therefore, the Hearing Examiner granted the Union's petition and amended the bargaining unit to include the Maintenance Mechanic I and Maintenance Mechanic II positions. The County appealed to the Board.

The Board, in its Final Order, affirmed the decision of the Hearing Examiner, determining that, because Maintenance Mechanics supervised inmates while they were working outside of the prison walls and, indeed, were the only employees watching the inmates when they were outside, they played a role in the security of the prison, and, thus, were properly classified as guards at prisons. The Board explained that, as part of the supervision of inmates in areas that were not secured, Maintenance Mechanics kept track of the inmates, sounded an alarm if a prisoner attempted to escape, could discipline inmates, could secure inmates and break up fights, and ensured that inmates did not steal tools that could be turned into weapons. Ultimately, the Board concluded that, because the County entrusted Maintenance Mechanics with the care, custody, and control of inmates under their supervision, and because they were part of the security infrastructure of the prison, they were properly included in the prison guard bargaining unit.

On further appeal by the County, a three-judge panel of the Commonwealth Court reversed in a divided published opinion. *Lancaster Co. v. PLRB*, 35 A.3d 73 (Pa.Cmwlth.2012). Looking to Section 604 of PERA, the Commonwealth Court majority, following a review of the hearing testimony, concluded that Maintenance Mechanics did not qualify as "guards at prisons" because they were not employed to provide security or ensure

that inmates remained in custody, but, rather, were employed to carry out maintenance functions. Specifically, with respect to the security aspect of their work, the court found, *inter alia*, that Maintenance Mechanics were not responsible for ensuring that prisoners remained in custody, did not impose discipline, handcuff inmates, perform searches or "shake-downs," quell disruptions or fights, were not responsible for escaped inmates, and did not man guard stations. While acknowledging the employees supervised work release inmates, the court reasoned that they did so akin to a private employer who had work release employees, and that the supervision was to ensure that maintenance tasks were completed. The court noted that Maintenance Mechanics had responsibility only over those inmates on work release, and did not have contact with other types of inmates. According to the court, unlike Maintenance Mechanics, prison guards wore uniforms, received extensive training in first aid, weapons, self-defense, hostage situations, inmate suicide prevention, escape situations, riots, and cell-block reporting, and were expected to aid in resolving disturbances. Maintenance Mechanics, according to the court, only attended a training course that all other mechanics in the prison attended to familiarize themselves with prison policy. Thus, the Commonwealth Court determined that Maintenance Mechanics were not prison guards within the meaning of Section 604 of PERA, and, thus, reversed the decision of the Board. Judge Simpson noted his dissent without opinion.

The Board sought this Court's discretionary review, which we granted to consider the following issue on appeal, as phrased by the Board:

Did the Board interpret the Public Employe Relations Act in a clearly erroneous manner by concluding that prison maintenance employes who supervise inmates on prison grounds outside the prison walls are prison guards for purposes of bargaining unit placement under the Act?

*Lancaster County v. PLRB*, 65 A.3d 914 (Pa.2013) (order).

By way of background in this area of labor relations, as a precursor to a representation election at which employees at

a particular workplace choose whether they desire to be represented by a union, the Board must first determine what group of jobs shall serve as the election constituency. If the employees choose a union to represent them, it is for this group of employees over which the union and the employer must bargain concerning wages, hours, and terms and conditions of employment. Thus, generally speaking, a bargaining unit is "a grouping of two or more employees aggregated for the assertion of organizational rights or for collective bargaining." Patrick Hardin & John E. Higgins, Jr., *The Developing Labor Law* at 589 (4th ed. 2001). "The size and composition of the bargaining unit are often the subject of dispute between a union and an employer." *Id.* In resolving unit issues, a primary concern is to group together only employees who have substantial mutual interests in wages, hours, and working conditions, i.e., a community of interest. Conversely, those who do not share similar working conditions should not be combined into a bargaining unit. Thus, the determination of an appropriate bargaining unit is to a large degree driven by the facts underlying the positions at issue.

Because of the wide differences in forms of employee organizations and the complexities of the modern workplace, detailed criteria for unit determinations would be unhelpful. For this reason, PERA has vested in the Board wide latitude to determine appropriate bargaining units. However, for public policy reasons, some specific statutory limitations exist. Specifically, while Section 604 of PERA provides that it is the Board that shall determine the appropriateness of a bargaining unit, in making that determination, the Board shall "[n]ot permit guards at prisons and mental health hospitals ... or any individual employed as a guard to enforce against employes and other persons, rules to protect property of the employer or to protect the safety of persons on the employer's premises to be included in any unit with other public employes." 43 P.S. § 1101.604(3). The terms "guard" and "guards at prisons" are not defined in PERA; however, this is an important determination, as those individuals classified as guards do not have the right to strike. 43 P.S. § 1101.1001.

With these underlying principles in mind, we turn to the arguments of the parties. The Board initially offers that PERA does not define the term "guards at prisons," and that, given the Board's administration of the statute, its interpretation should be given controlling weight. The Board maintains that the Commonwealth Court improperly substituted its judgment for that of the Board in interpreting PERA. Specifically, the Board points out that, while Section 604 does not define the term "guards at prisons," under its prior interpretation of the statute, the term properly includes any employee that is responsible for the security of inmates at a prison, and is a vital cog in the security apparatus of the prison. As support, the Board cites various other decisions in which it classified various government workers as guards when their job duties so warranted, including *Luzerne County,* 15 PPER ¶ 15155 (Order Directing Submission of Eligibility List, 1984) (residential aides); *Westmoreland County,* 32 PPER ¶ 32133 (Proposed Order of Dismissal, 2001) (correctional counselors and treatment supervisors); *Cumberland County,* 13 PPER ¶ 13035 (Order Directing Submission of Eligibility List, 1982) (records clerks who escorted inmates); *Huntingdon County,* 12 PPER ¶ 12156 (Order Directing Submission of Eligibility List, 1981) (cooks who supervised work release inmates); *Commonwealth of Pennsylvania, Dept. of Corr.,* 19 PPER ¶ 19025 (Proposed Order of Unit Clarification, 1987) (food service instructors, equipment operators, tradesman instructors, and factory foremen who worked alone with inmates). According to the Board, the logic behind these determinations is reasonable, as employees responsible for the security of inmates at a prison should not be afforded the right to strike, and the fact that Maintenance Mechanics do not perform the same duties or have the same training as traditional uniformed correctional officers, does not preclude a finding that these employees should be considered to be guards at prisons.

Applying the definition of "guard" and the underlying public policy to the facts *sub judice,* the Board asserts that Maintenance Mechanics are part of the security apparatus of the prison, as they watch the inmates who work outside the prison

walls where they are not under the watch of corrections officers, and, thus, should be included in a bargaining unit of guards who are not permitted to strike. Further, the Board argues that in coming to a contrary conclusion, the Commonwealth Court did not determine that any of the Board's findings were unsupported by the substantial evidence of record, but instead made its own credibility determinations and findings of fact, in violation of the proper standard of review. The Board cites various alleged discrepancies between the Board's findings and the court's findings, including a dispute as to whether maintenance employees work alone in supervising inmates outside prison walls, and whether inmates assigned to Maintenance Mechanics were the same as "work release" inmates that would work for a private employer. According to the Board, Maintenance Mechanics work alone supervising inmates outside of the prison and, unlike those work release inmates who leave the prison to work for a private employer, the inmates assigned to maintenance work are escorted at all times by Maintenance Mechanics and cannot leave the prison on their own. The Board also submits that the Commonwealth Court improperly disregarded the Board's findings that Maintenance Mechanics have encountered disturbances such as fights, unruly inmates, and inmates spitting on them. Further, the Board stresses that, unlike other county maintenance workers, Maintenance Mechanics are exclusively assigned to the prison on a daily basis and require no escort within the prison. Thus, the Board maintains that its conclusion that Maintenance Mechanics are a vital cog in the security apparatus of the prison because they perform essential duties related to inmate security, is supported by the substantial evidence of record and free from legal error.

In response, the County asserts that, because PERA does not define the term "guards at prisons," our Court is not required to defer to the Board's interpretation of this statutory language, and that our review is *de novo*. The County further claims, citing certain Board decisions, that the Board has previously defined "guards at prisons" to mean those

employees whose *primary* responsibility involves direct inmate security, an approach which the Board failed to adhere to in this case. *See, e.g., Commonwealth of Pennsylvania,* 23 PPER ¶ 23223 (1992). Indeed, the County maintains that, under the Board's interpretation of the term, the performance of any duty related to inmate security, no matter how inconsequential, would render an employee a prison guard. Rather, the County contends that the Commonwealth Court has adopted a "primary responsibility" test, used by the National Labor Relations Board, which, in interpreting statutory definitions, looks to the main function of the position. *Township Falls v. Commonwealth,* 14 Pa.Cmwlth. 494, 322 A.2d 412 (1974). Related thereto, the County notes that prison guards are statutorily not permitted to strike, and avers that, because Maintenance Mechanics do not function as traditional uniformed correctional officers, if they went on strike, the only effect on the inmates would be that they would not have the opportunity to do maintenance work for the duration of the strike, the County would bring in other County maintenance employees or outside vendors to do the maintenance work, and the security function of the prison would not be impaired. Thus, according to the County, Maintenance Mechanics are not essential public employees whose duties are critical to the health and safety of the Commonwealth, and, who should be precluded from striking.

The County further notes that Maintenance Mechanics have none of the security-related job training or duties of traditional corrections officers. Specifically, the County offers that Maintenance Mechanics do not fill in for corrections officers and, like most staff, are prohibited from taking action to secure or control an inmate. The County points out that Maintenance Mechanics are not permitted to perform searches of inmates, carry or use handcuffs or shackles, apprehend a fleeing inmate, or search for escaped prisoners. The County emphasizes that while both Maintenance Mechanics and traditional correctional officers may call a "code" if there is an inmate disturbance, correctional officers are to contain and suppress the disturbance, whereas Maintenance Mechanics

are not responsible for preventing inmate escapes, and, are, in fact, forbidden from doing so. Moreover, the County claims that evidence regarding Maintenance Mechanic discipline of employees is meager and contrary to the substantial evidence of record. The County maintains that Maintenance Mechanics lack the training tools and authority to be responsible for the security of inmates and that overseeing and directing maintenance work is different than being primarily responsible for inmate security.

With respect to the Board's charge that the Commonwealth Court engaged in improper fact finding, the County points to, *inter alia,* the Board's assertion that inmates working outside of the prison are unsupervised except by Maintenance Mechanics, and offers, to the contrary, that guards continue to monitor inmates from atop the prison walls. Similarly, the County adds that the Commonwealth Court did not make credibility determinations when it found the work release program with Maintenance Mechanics is the same work release program that places inmates with private employers, as, according to the County, this is an undisputed fact of record. Ultimately, the County submits that the Commonwealth Court reviewed the record, and determined that many of the factual findings were not supported by the substantial evidence of record and were contradicted by the undisputed evidence. The County highlights that it remains within the purview of an appellate court to consider whether a reasonable mind may make the same decision on the evidence before the agency.

Finally, the County suggests that the Maintenance Mechanics are not dissimilar to other County maintenance workers, as they share similar duties, supervision, training, compensation, and were consolidated by the County for greater efficiency and flexibility by creating interchangeability among maintenance employees both within and outside of the prison. Ultimately, the County maintains that the Union's actions are an attempt to prevent the County from using maintenance employees in an efficient manner that will save taxpayers money.

We begin our analysis by considering the proper standard of review. The legal issue before us is somewhat unique, as it

concerns both statutory interpretation, i.e., a legal standard, and the application of that legal standard to facts. We recently noted in *Borough of Ellwood City v. PLRB*, 606 Pa. 356, 998 A.2d 589, 594 (2010), that generally speaking, an appellate court's review of an agency decision is limited to a determination of whether there has been a violation of constitutional rights, an error of law, a procedural irregularity, or whether the findings of the agency are supported by the substantial evidence of record. Stressing the deferential nature of appellate review of an agency decision, we further explained: "a decision of the Board must be upheld if the Board's factual findings are supported by substantial evidence, and if conclusions of law drawn from those facts are reasonable, not capricious, arbitrary, or illegal." *Id.*

With respect to issues involving the interpretation of a statute, an administrative agency's interpretation is to be given "controlling weight unless clearly erroneous." *Id.* However, when an administrative agency's interpretation is inconsistent with the statute itself, or when the statute is unambiguous, such administrative interpretation carries little weight. *Commonwealth Office of Admin. v. PLRB*, 591 Pa. 176, 916 A.2d 541, 549 n. 11 (2007). Appreciating the competence and knowledge an agency possesses in its relevant field, our Court opined that an appellate court "will not lightly substitute its judgment for that of a body selected for its expertise whose experience and expertise make it better qualified than a court of law to weigh facts within its field." *Borough of Ellwood City*, 998 A.2d at 594. Moreover, we have emphasized that this high level of deference is especially significant in the complex area of labor relations. *Nazareth v. PLRB*, 534 Pa. 11, 626 A.2d 493, 496 & n. 5 (1993). Additionally, with respect to the specific issue of bargaining unit determinations, our Court has indicated that deference to the Board's reasonable and longstanding construction of a statute is appropriate. *Vlasic Farms, Inc., v. PLRB*, 565 Pa. 555, 777 A.2d 80, 83 (2001). Even further, our courts have indicated that policy matters are to be left largely to the Board. *Philadelphia Housing Authority v. PLRB*, 153 Pa.Cmwlth. 20, 620 A.2d

594, 598 (1993) ("policy considerations are within the Board's expertise and deference to that expertise is required") (citing *Appeal of Cumberland Valley School Dist.*, 483 Pa. 134, 394 A.2d 946 (1978)). Finally, our "scope of review is plenary in that we can consider the entire record." *Borough of Ellwood City*, 998 A.2d at 594.

With this deferential standard of review in this area of the law in mind, we consider the General Assembly's intent with respect to PERA's term "guards at prisons," and then we address the Board's application of the facts in this appeal to that interpretation.

■ To determine the legislature's intent with respect to the term "guards at prisons," we necessarily turn to the Statutory Construction Act. 1 Pa.C.S.A. §§ 1501 *et seq.* The objective of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. 1 Pa.C.S.A. § 1921(a). The best indication of the legislature's intent is the plain language of the statute. When considering statutory language, "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage." 1 Pa.C.S.A. § 1903(a). Further, when the words of a statute are clear and unambiguous, there is no need to go beyond the plain meaning of the language of the statute "under the pretext of pursuing its spirit." *Id.* § 1921(b). Thus, only when the words of a statute are ambiguous, should a reviewing court seek to ascertain the intent of the General Assembly through considerations of the various factors found in Section 1921(c). *Id.* § 1921(c); *see generally Bayada Nurses Inc. v. Com. Dept. Labor and Indus.*, 607 Pa. 527, 8 A.3d 866, 880–81 (2010).

The term "guards at prisons" is not defined in Section 604 or any other section of PERA. A dictionary entry at the approximate time of the enactment of PERA defines "guard," in relevant part, as one who is "responsible for the safety and discipline of inmates of a prison, reformatory, or other place of detention while they are within the institution, in transit to or from the institution, or on work detail." Webster's Third New

International Dictionary, 1007 (G. & C. Merriam Company 1965). Similarly, a later entry offers that the term "guard" has been defined as, "1. One that guards, keeps watch over, or protects. 2. An individual or a group that stands watch or acts as a sentinel. 3. One who supervises prisoners." The American Heritage Dictionary of the English Language, 584 (Houghton Mifflin Company 1981). Thus, it appears that, by the plain words of the statute, the term "guards at prisons" is broad in meaning, and includes those who are responsible for prisoners on work detail and who supervise prisoners. Under this construct, the term "guards at prisons" clearly contemplates maintenance employees who supervise inmates, thereby supporting the Board's interpretation of the term "guards at prisons." Again, the Board's construction of its governing statute should be given controlling weight unless clearly erroneous. *Borough of Ellwood City*, 998 A.2d at 594.

Yet, even if the meaning of the term "guards at prisons" is not clear and unambiguous after considering the language of PERA, a review of the various factors under 1 Pa.C.S.A. § 1921(c) of the Statutory Construction Act leads us to conclude that the legislature envisioned a broad definition of the term "guards at prisons." In particular, we consider the occasion and necessity for the statute; the object to be obtained; the consequences of a particular interpretation; and administrative interpretations of the statute. 1 Pa.C.S.A. § 1921(c)(1),(4),(6), and (8).

Here, the occasion and necessity for the statutory language and the object to be obtained are similar in nature to the consequences of a particular interpretation, and lead to a broad understanding of the term "guards at prisons." 1 Pa.C.S.A. § 1921(c)(1),(4), and (6). Specifically, Section 604(3) of PERA mandates the segregation of guards at prisons into separate bargaining units. The occasion and necessity for this segregation is, in part, to prohibit guards from striking. 43 P.S. § 1101.1001 ("[s]trikes by guards at prisons or mental hospitals ... are prohibited at any time ..."). Clearly, this prohibition on the right to strike is to ensure the safety of inmates and employees at prisons, as well as the general

public. This safety-based policy counsels toward finding a legislative intent to broadly define the term "guard." Similarly, with regard to the consequences of a particular interpretation, if not classified as guards, Maintenance Mechanics would be permitted to lawfully strike from their work of monitoring inmates, leading to a potential security risk for the community, further supporting a conclusion that the General Assembly intended to embrace all positions of a supervisory and security nature within the definition of "guards at prisons." *Office of Admin. v. PLRB*, 528 Pa. 472, 598 A.2d 1274, 1278 (1991) ("explaining denial of strike to "essential public employees," including prison guards, as such prohibition is essential to the health and safety of the citizens of this Commonwealth"). The County maintains, however, that there would be limited consequences if Maintenance Mechanics were permitted to strike, claiming that only maintenance work would not be completed, inmates would not be permitted outside for a work detail, and that there is the possibility of hiring replacements. This argument, however, fails to account for the ramifications of a strike on county sentencing mandates, such as intermediate punishment programs and work release programs that require inmates to perform tasks related to the maintenance of public property. It also fails to recognize the effect on normal prison operations, as well as the impact on county resources, if strike replacements were used. Further, in its argument to the Court, the County does not take into account the deference to be accorded the Board in statutory interpretation under its charter.

Finally, through the Statutory Construction Act, the legislature requires that we look to the administrative interpretations of this provision in discerning the intent of the General Assembly. 1 Pa.C.S.A. § 1921(c)(8). As noted above, the Board has a long-standing and consistent interpretation of the term "guards at prisons," which includes any employee that is responsible for the security of inmates at a prison. *See, e.g., Dept. of Corrections*, 41 PPER ¶ 100 (Final Order, 2010) (instructors); *Westmoreland County*, 32 PPER ¶ 32133 (Proposed Order of Dismissal, 2001) (correctional counselors and

treatment supervisors); *Commonwealth of Pennsylvania, Dept. of Corr.,* 19 PPER ¶ 19025 (Proposed Order of Unit Clarification, 1987) (food service instructors, equipment operators, tradesman instructors, and factory foremen who worked alone with inmates); *Luzerne County,* 15 PPER ¶ 15155 (Order Directing Submission of Eligibility List, 1984) (residential aides); *Fayette County,* 14 PPER ¶ 14159 (Final Order, 1983) (maintenance workers); *Cumberland County,* 13 PPER ¶ 13035 (Order Directing Submission of Eligibility List, 1982) (records clerks who escorted inmates to quarters, and doctor); *Huntingdon County,* 12 PPER ¶ 12156 (Order Directing Submission of Eligibility List, 1981) (cooks who supervised work release inmates). Related thereto, we reject the County's claim that the Board and the Commonwealth Court have adopted a "primary responsibility" test, and that the Board failed to apply this standard.[1] Contrary to the County's assertions, the Board's decisions noted above did not hinge on the extent to which employees acted as guards, but, rather, looked to see if the employees' duties included security matters. In the Board's consistent view for over 20 years, it is the nature of an employee's duties that is controlling and not the frequency thereof. *See Dept. of Corrections; Fayette County, supra.* Simply stated, the employees in question do not need to be full-time correctional officers before they are considered "guards at prisons" for purposes of the state's labor laws.

■ Thus, based upon the occasion and necessity for, and the object to be obtained by, the statutory language; the consequences of a particular interpretation of the language; as well as the Board's historic and consistent interpretation of the term, we find that the legislature intended the definition of the term "guards at prisons" in the labor context to be broad,

1. In the only case cited by the County in support of its assertion of the requirement of such a test, *Township Falls, supra,* the court looked to the main function of the employees at issue, but did so in the context of school crossing guards; relied upon federal labor law, which involves security personnel working for employers in the private sector; did not embrace an overarching test, and did not speak to the unique circumstances of guards at prisons.

and to include those in positions which supervise inmates and which are responsible for the security of inmates as a part of the overall security of the prison.[2]

Having determined the legislature's intent regarding the proper interpretation of the term "guards at prisons," we now turn to consider whether, in applying this interpretation, the factual findings of the Board are supported by the substantial evidence of record, and whether its conclusions of law drawn from those facts are reasonable, and not capricious, arbitrary, or illegal. *Borough of Ellwood City*, 998 A.2d at 594. Again, in light of the fact-laden nature of the inquiry, and the agency's expertise in this field, we give substantial deference to the Board's decision in our review. *Nazareth*, 626 A.2d at 496.

In support of its bargaining unit determination, the Board found that Maintenance Mechanics supervise inmates while they are working outside of the prison walls, and, indeed, are the only employees watching the inmates when they are outside the prison walls. These employees must keep track of the inmates, make sure that inmates do not steal tools that may be turned into dangerous weapons, have a duty to sound the alarm if one attempts to escape, have the authority to discipline inmates, and have, on occasion, assisted in securing inmates and breaking up fights. Ultimately, the Board reasoned that these duties showed that the County had entrusted the Maintenance Mechanics with the care, custody, and control of inmates under their supervision, and demonstrated that these employees were part of the security infrastructure of the prison. Based upon the above, we conclude that these factual findings are supported by the substantial evidence of record.

2. While the County warns that, under the Board's interpretation of the statute, the performance of any inconsequential duty related to inmate security would render an employee a prison guard, this has not been the case under the Board's own precedent, which has found various employees not to constitute guards at prisons, depending upon the duties at issue. *See, e.g., Somerset County,* 22 PPER ¶ 22055 (Proposed Order of Dismissal, 1991) (cooks not guards at prisons due to lack of security duties); *Cumberland County,* 12 PPER ¶ 12198 (Order Directing Submission of Eligibility List, 1981) (same).

■ Further, based upon these facts, the Board's conclusion that the Maintenance Mechanic I and Maintenance Mechanic II positions were "guards at prisons," as they supervise inmates and are responsible for the security of inmates as a part of the overall security of the prison, is reasonable, in accord with the Board's consistent interpretation of the statutory term "guards at prisons," and is not capricious, arbitrary, or illegal. While certain evidence as relied upon by the Commonwealth Court emphasized the non-security aspects of the duties of Maintenance Mechanics, because, as found by the Board, they are responsible for the security of inmates at the prison, the fact that Maintenance Mechanics do not serve the same function as traditional uniformed correctional officers, does not preclude a finding that these employees should be considered to be guards at prisons. Accordingly, we find that the Commonwealth Court did not apply the proper level of deference in its review of the Board's finding of facts and conclusions of law, and, thus, we reverse the order of the Commonwealth Court, and reinstate the Board's Final Order.

Jurisdiction relinquished.

Justices SAYLOR, BAER, McCAFFERY and STEVENS join the opinion.

Justice EAKIN files a dissenting opinion in which Chief Justice CASTILLE joins.

Justice EAKIN, dissenting.

I respectfully dissent, as I find maintenance mechanics do not qualify as prison guards. As the majority points out, the term "guards at prisons" is not defined under any section of the Public Employe Relations Act, 43 P.S. §§ 1101.101 *et seq.*, and, as a clear and unambiguous term, it must be construed according to its "common and approved usage[.]" *See* 1 Pa.C.S. § 1903(a); *see also id.*, § 1921(b). I agree with the majority's determination that, by using the plain language "guards at prisons," the legislature intended a meaning more expansive than traditional notions of uniformed correctional officers, but I respectfully would find the term less expansive

than the majority suggests. The term "guard" is not so broad as to include anyone who may supervise a prisoner at some point. When the General Assembly statutorily precluded "guards at prisons" from striking, it certainly could not have intended to include all positions having some occasional supervisory role; indeed, in a prison, inmates are always subject to supervision by everyone else—as trustees, they sometimes supervise each other. The majority's scope would essentially encompass any individual working with inmates.

The use of "guards at prisons" indicates not only traditional full-time correctional officers but also any prison employee whose duty is to provide security, keep order, ensure inmates remain in custody, and contribute to inmate rehabilitation. The integral purpose of every day-to-day task performed by a guard is to maintain a safe prison environment, *i.e.*, conducting searches, escorting inmates, observing and assessing behavior, responding to incidents, compiling information and reports, and operating security equipment. Any act carried out by guards corresponds to their responsibility for the prison and its inmates. The term "prison guard" can entail much more than the term "correctional officer"—ranging from special operations response teams, gang units, and drug interdiction teams, to routine patrol officials, prison intake, watchtower sentinels, and camera security officers. The commonality amongst all of these employees is the reason they were hired—to guard.

In contrast, maintenance mechanics are not hired to guard anything. The sole basis for their hiring is to perform maintenance functions. Their duties include lawn care, landscaping, janitorial work, trash removal, and plumbing and electrical repair. The prison permits privileged inmates to assist maintenance mechanics, and although maintenance mechanics could report unlawful inmate behavior and supervise inmates by assuring they properly complete custodial duties, maintenance mechanics do not "guard" anything or anyone. They do not ensure inmates remain in custody or abide by sentencing terms, nor do they conduct disciplinary and investigatory acts, carry out surveillance, or prevent escape. They have no

training or experience in protecting the prison or handling its inmates, such as first aid, weapons, defense, suicide prevention, escapes, riots, or cell-block control. Their job functions do not equate to protecting or guarding the prison environment; their responsibilities are limited to overseeing prison maintenance and managing upkeep.

Further, as the Commonwealth Court applied the proper standard of review and found the Board's conclusions of law illegal, I cannot join the majority's holding that the court failed to apply the proper level of deference. *See Lancaster County v. Pennsylvania Labor Relations Board,* 35 A.3d 73, 78–79 (Pa.Cmwlth.2012) ("Unless maintenance mechanics are considered prison guards, under this provision, it would be illegal to include them in a guards unit[.] ... Because [they] are not prison guards within the meaning of Section 604 ..., the Board erred in including them as part of the prison guards unit."). For these reasons, I respectfully dissent.

Chief Justice CASTILLE joins this dissenting opinion.