**ALLEN BRADLEY COMPANY,**
Petitioner,

v.

**NATIONAL LABOR RELATIONS**
**BOARD, Respondent.**

No. 13042.

United States Court of Appeals
Seventh Circuit.

Feb. 9, 1961.

John G. Kamps, Milwaukee, Wis., James A. Urdan, Quarles, Herriott & Clemons, Milwaukee, Wis., for petitioner.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Stuart Rothman, General Counsel, Dominick L. Manoli, Associate General Counsel, Frederick U. Reel, George B. DuBois, Jr., Attorneys, National Labor Relations Board, Washington, D. C., for respondent.

Before SCHNACKENBERG, CASTLE, and MAJOR, Circuit Judges.

MAJOR, Circuit Judge.

This case is here upon petition of Allen Bradley Company (herein called the Company) to review and set aside an order of the Board issued against it on April 6, 1960, pursuant to Sec. 10(c) of the National Labor Relations Act, as amended (61 Stat. 136, 29 U.S.C.A. Sec. 151 et seq.). The Board's decision and order are reported at 127 NLRB No. 8. In its answer to the petition, the Board requested enforcement of its order. This Court has jurisdiction, the unfair labor practices having occurred in Milwaukee, Wisconsin, where respondent is engaged in the manufacture and sale of electrical equipment in interstate commerce.

Upon a stipulation of facts, the Board found that the Company violated Sec. 8 (a) (5) and (1) of the Act by insisting on bargaining as a condition precedent to entering into a contract with the Union (Tool and Die Makers, Lodge No. 78, International Association of Machinists, AFL–CIO), on a Company proposal limiting the Union's right to discipline or fine its members.

In June 1954, the Board certified the Union as the bargaining agent for the Company's tool room employees. Thereafter, a collective bargaining agreement was negotiated between the parties, expiring September 1, 1956. Following the expiration of this agreement, a strike of three weeks' duration was called by the Union, in which some of the employees in the bargaining unit participated. However, fourteen employees who were members worked a part or all of the time during the strike. Each of the employees who thus worked was fined in the sum of $100, and local court actions were instituted to collect the same. These employees filed charges with the National Labor Relations Board, alleging that the Union violated Sec. 8(b) (1) (A) of the National Labor Relations Act. These charges were dismissed by the Regional Director and, on appeal, this action was upheld by the General Counsel of the Board. A complaint was then filed with the Wisconsin Employment Relations Board which ruled that the Union had violated the Wisconsin Employment Peace Act, Stats.1955, § 111.01 et seq., and ordered it to cease and desist from collecting the fines previously imposed. This order was reversed by the Wisconsin Supreme Court October 4, 1960, on the ground that the jurisdiction of the State Board had been preempted by Congress and vested exclusively in the National Labor Relations Board. Wisconsin Board v. Lodge 78, IAM, 46 LRRM 3062.

While we recognize that the problem here must be solved on the basis of the record before us, we think we may appropriately take notice of a factual statement contained in the State Court decision, as it emphasizes the background leading up to the instant controversy. That Court stated:

"During the strike fourteen members of the Union crossed the Union's picket line and continued to work for the Company. After the conclusion of the strike such fourteen members were tried by the Union on charges that their conduct constituted a violation of the Union's constitution and by-laws, and each was fined $100. * * * Demand was made upon each of the fourteen for payment of such fines and on January 24, 1957, the Union instituted fourteen separate actions in the civil court of Milwaukee county to collect such fines."

On May 21, 1959, at a collective bargaining session between the parties, the Company submitted to the Union in written form two tentative clauses which had

previously been discussed. These clauses were proposed in the alternative as follows:

"Neither the Company nor the Union nor its members will interfere with, restrain or coerce by discipline, discharge, fine or otherwise, any employee in the exercise of his rights guaranteed by Section 7 of the Labor-Management Relations Act, including the right to refrain from any or all of the specified activities."

Or

"Neither the Company nor the Union nor its members will interfere with, restrain or coerce by discipline, discharge, fine or otherwise, any employee in the exercise of his right to self-organization, to form, join or assist labor organizations, to bargain collectively through representatives of his own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, or his right to refrain from any or all such activities."

In submitting these proposed clauses, the Company stated that it was open to discussion regarding the phraseology but that it would stand firmly for the principle set forth in the clauses and would insist that the Union make such an agreement. The Union took the position that the matter contained in these clauses was not a proper subject for collective bargaining because it related only to the internal affairs of the Union. At subsequent bargaining sessions the Company reiterated its position that a collective bargaining agreement could not be consummated absent Union agreement to the principle set forth in the proposed clauses. No question is raised but that the Company bargained in good faith in all other respects.

On the foregoing facts, the Board found that the Company violated Sec. 8(a) (5) and (1), and by the order under review required it to cease and desist from refusing to bargain collectively with the Union and from any like or related invasion of employee rights, to bargain with the Union upon request and to post the usual notices.

Two sections of the Act are involved. Section 8(d) requires an employer to bargain in good faith with the representative of the employees "with respect to wages, hours, and other terms and conditions of employment." Section 8(b) (1) (A) makes it an unfair labor practice for a labor organization "to restrain or coerce" an employee in the exercise of the rights guaranteed by Section 7. The latter section guarantees an employee the right to engage in concerted activities for the purpose of collective bargaining or other mutual aid or protection, and also "the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment." (In the instant case there was no agreement requiring membership in the Union.) Section 8(b) (1) (A) contains a proviso as follows:

"Provided, That this paragraph shall not impair the right of a labor organization to prescribe its own rules with respect to the acquisition or retention of membership therein."

The problem for decision is whether the proposal which the Company submitted to the Union was directed at "rates of pay, wages, hours of employment, or other conditions of employment," or Union rules "with respect to the acquisition or retention of membership therein." The Board in its brief states the problem thus:

"The question in this case is whether the clause on which the Company insisted, limiting the Union's right to discipline or fine its members, dealt with 'terms or conditions of employment' or with 'relations between employees and their unions.'"

While other cases are cited by the Board which it is asserted support its position by analogy, its principal reliance is upon N.L.R.B. v. Wooster Division of

Borg-Warner Corp., 356 U.S. 342, 78 S.Ct. 718, 2 L.Ed.2d 823. In that case the employer insisted that a collective bargaining contract with its employees include a "ballot" clause requiring a pre-strike secret vote of employees concerning the employer's last offer as a prerequisite to the right of the Union to call a strike. The Court held that bargaining in good faith with respect to "wages, hours, and other conditions of employment" was mandatory, but that the "ballot" clause was not included within that phrase. Relative thereto, the Court stated (356 U.S. at page 349, 78 S.Ct. at page 723):

> "It relates only to the procedure to be followed by the employees among themselves before their representative may call a strike or refuse a final offer. It settles no term or condition of employment—it merely calls for an advisory vote of the employees. It is not a partial 'no-strike' clause. A 'no-strike' clause prohibits the employees from striking during the life of the contract. It regulates the relations between the employer and the employees. See [National] Labor [Relations] Board v. American [Nat.] Insurance Co., supra [343 U.S. 395], at [page] 408, n[ote] 22 [72 S.Ct. [824,] at page 831, 96 L.Ed. 1027]. The 'ballot' clause, on the other hand, deals only with relations between the employees and their unions."

In our view, Borg-Warner furnishes no support for the Board's position in the instant situation; in fact, its rationale points in the opposite direction. Section 7 protects an employee in his right to refrain from concerted activities and this includes, of course, the right to refuse to participate in or recognize a strike. Coercion or interference with that right, whether by the employer or by the union, is made an unfair labor practice by the terms of the Act. So far as material to the instant situation, the Act permits no impairment of the right of an employee to work, with the corollary right of the employer to utilize his services.

The Court in Borg-Warner reasoned that the "ballot" clause "deals only with relations between the employees and their unions." The Act preserves the right to strike (Sec. 13), and the reasoning of the Court evidently was based on the premise that the manner and means by which the Union decided to call a strike was of no concern to the employer, that it was of concern only to the employees and their union. In contrast, the subject matter of the proposal in the instant case is of mutual concern to the employee and his employer. The situation is more akin to the "no-strike" clause which the Court in Borg-Warner recognized as concerned with "relations between the employer and the employees" and, therefore, a proper matter for collective bargaining. The purpose of such a clause was to prevent a strike by the employees during the period covered by the agreement so that the employer might retain the benefit of their services. The purpose of the clauses proposed here was to permit employees to work both for their benefit and for that of the employer.

The Company by its proposals sought this means of protecting its rights because this same Union during the course of a prior strike had threatened and imposed coercive fines against members who worked. The Board's argument that the Company sought to accomplish something essentially different from a no-strike clause is to ignore realities. In each instance the Company makes a proposal which will enable it, if agreed to by the Union, to utilize the unimpaired services of its employees. That an employer has a vital interest in such a proposal may be illustrated by assuming that a number of employees, holding key positions, were by Union coercion prevented from working. The result might well be as disastrous to the Company as to the employees. The principle, of course, would be the same whether such employees hold key or minor positions. In our view, the Company proposals related to "terms and conditions of employment"

and were, therefore, a subject for mandatory bargaining.

■ This case might well be disposed of on the basis of what we have said. However, the Board strenuously insists that the Company proposal was not a subject for bargaining because the Union in its coercive activities was protected under the proviso in Sec. 8(b) (1) (A), which authorizes the Union to prescribe its own rules "with respect to the acquisition or retention of membership therein." True, the fines which the Union had previously imposed and about which the Company was concerned were authorized by Union rule. Even so, there is nothing in the situation before us which indicates that such fines bore any relation to the "acquisition or retention of membership." The Board evidently recognizes this because it argues, "imposition of the fine is merely a step in determining membership status; non-payment leads to expulsion." We assume that a union has broad powers in prescribing rules relative to the acquisition and retention of its members. However, that power, in our view, is not absolute. It goes beyond any permissible limit when it imposes a sanction upon a member because of his exercise of a right guaranteed by the Act. Coercive action, whether by way of fine, discharge or otherwise, which deprives a member of his right to work and his employer of the benefit of his services, cannot be said to relate only to the internal affairs of the union.

The Board cites L. D. Willcutt & Sons Co. v. Bricklayers', etc., 200 Mass. 110, 85 N.E. 897, 901, 23 L.R.A.,N.S., 1236, which held that a union may impose a fine upon a member who fails to attend union meetings. The imposition of a fine under such circumstances is a far cry from the instant situation where members were coerced to refrain from exercising their right to work, thereby depriving the employer of their services. Obviously, it is of no concern to the employer whether a member attends union meetings or whether the union imposes a fine for failure to do so. The case, if it has any bearing, reinforces the distinction which we have previously made between a provision which concerns only the relations between employees and their union and one with which the employer is also concerned.

■ In our view, and we so hold, the proposals made by the Company presented a proper subject for collective bargaining, concerning which the Union was obliged by the Act to bargain in good faith. Therefore, the Company by its insistence that the Union do so committed no unfair labor practice.

The petition to review and set aside the Board's order is allowed, and the Board's request for enforcement of its order is denied.