FRATERNAL ORDER OF POLICE HAAS MEMORIAL LODGE # 7, Petitioner,

v.

PENNSYLVANIA LABOR RELATIONS BOARD, Respondent.

Commonwealth Court of Pennsylvania.

Argued June 2, 1997.

Decided June 20, 1997.

Count III of the petition for review.

Charles D. Agresti, Erie, for petitioner.

Peter Lassi, Harrisburg, for respondent.

Robert C. Brabender, Erie, for intervenor, city of Erie.

Before SMITH and FRIEDMAN, JJ., and NARICK, Senior Judge.

NARICK, Senior Judge.

The issue before this Court is whether a city ordinance passed in 1981, but not implemented until 1995, can be challenged in 1995, as an unfair labor practice.

The Fraternal Order of Police, Haas Memorial Lodge No. 7(FOP) appeals from the order of the Pennsylvania Labor Relations Board (PLRB) that vacated the hearing examiner's determination and directed the FOP's charge of unfair labor practice against the City of Erie (City) be dismissed. We affirm.

In 1950, the City enacted an ordinance establishing a police pension plan (plan). In 1971, the City amended the plan to provide an automatic cost of living allowance (COLA), as determined by the United States Department of Labor.

On February 11, 1981, the City enacted Ordinance 3A–1981, which further amended the plan to provide that effective January 1, 1981, any individual subsequently hired by the police department would not receive the automatic COLA. The FOP, as exclusive bargaining representative of the City's police officers, were present at the public meeting of City Council when ordinance 3A–1981 was passed. The FOP advised its members of the action taken by the City but did not raise any objections or challenge the City's unilateral action.

From 1981 to 1994, the City erroneously failed to adjust its contribution to the police pension fund to reflect Ordinance 3A–1981. In 1994, the City became aware of its error as did the FOP. Between April and June 1994, the Pension Board distributed an updated set of bylaws to all current employees and retirees, which stated that the police officers hired after January 1, 1981 "shall not receive the automatic cost of living increase to pension benefits." (FOP Exhibit 6 at 13–14.)

After the FOP and the City reached impasse in its negotiations for a 1995 collective bargaining agreement, the parties engaged in interest arbitration. At hearing on January 30, 1995, before the interest arbitration panel, the City presented testimony that its 1995 budget did not include funding for a pension COLA for police officers hired after January 1, 1981.

On February 22, 1995, the FOP filed a charge of unfair labor practices with the PLRB, alleging that the City violated Section 6(1)(e) of the Pennsylvania Labor Relations Act (PLRA), Act of June 1, 1937, P.L. 1168, *as amended*, 43 P.S. § 211.6(1)(e) [1] by unilat-

1. Section 6(1)(e) of PLRA, provides:

Section 6. Unfair Labor Practices.—(1) It shall be an unfair labor practice for an employer—

\* \* \* \* \* \*

(e) To refuse to bargain collectively with the representatives of his employes, subject to the provisions of Section 7(a) of this Act.

erally changing the plan to deny an automatic COLA to police officers hired after January 1, 1981.

The City filed a motion to quash the unfair labor practice charge as untimely filed under the six-week limitation period set forth in Section 9(e) of PLRA, 43 P.S. § 211.9(e). The hearing examiner denied the City's motion and held a hearing where the parties entered into several stipulations and the FOP presented two witnesses and several exhibits.

The hearing examiner entered a proposed decision and order, which concluded that the FOP's unfair labor practice charge was timely filed. The City filed exceptions and the PLRB entered a final order, which concluded that the FOP's unfair labor practice charge was untimely filed and vacated the hearing examiner's proposed decision.

On appeal to this Court,[2] the FOP argues that the PLRB erred as a matter of law in concluding that its unfair labor practice charge was untimely filed. In its brief, FOP asserts that the City is estopped from implementing Ordinance 3A–1981 because FOP detrimentally relied upon the City's continued funding.

■ The crux of FOP's argument is that the time limitation set forth in 9(e) of PLRA does not apply here because of the City's failure to implement Ordinance 3A–1981 until 1995. We are not persuaded.

FOP had reason to believe that an unfair practice had occurred on February 11, 1981, when it witnessed the City Council's unilateral amendment of the plan. It stipulated that it knew of the ordinance's passage in 1981, and that it was unaware of the City's excess pension contributions until 1994. Thus, we must ask, that if FOP was unaware of the City's excess contribution, then how can the contributions now be the basis for FOP's claim that it "reasonably believed" that the City had not implemented the change in the pension COLA? FOP certainly had no knowledge that the City would neglect to adjust its pension contribution to reflect the change in the terms of the plan.

The FOP cites *City of Reading,* 18 Pa. Pub. Employe R. 18239 and *City of Easton,* 20 Pa. Pub. Employe R. 22048, to support its position. However, this reliance is misplaced.

In *Reading,* the city, had passed, in 1981, a resolution imposing a fine upon employees who misplaced or lost fuel cards; however, the city only began enforcing the resolution in 1987. Thus, from 1981 to 1987, fuel cards had been lost but the city had elected not to penalize the careless card holders. When, in 1987, the union brought an unfair labor practice charge against the city, the PLRB did not hold the action time-barred, as the employees had since 1981, relied upon the city's failure to enforce the resolution. The PLRB held that the employees/card holders knew they and others had lost fuel cards and had not been penalized and thus, had been allowed to develop a sense of reliance that the city would not enforce its ordinance. Here, FOP and its members knew that Ordinance 3A–1981 would take effect within ten days of its passage in 1981. FOP had six weeks from the date of the ordinance's passage to contest the City's action and did not do so. Unlike the careless card holders in *Reading,* FOP had no reason to believe Ordinance 3A–1981 would not be honored in its application when post–1981 hirees reached retirement age.[3]

The applicability of *Easton,* is similarly unfounded. In *Easton,* the city, in 1985, enacted an ordinance establishing minimum fitness standards for police officers. The new requirements were enforced until May 8, 1987, when the chief of police (in response to FOP's written objection) issued an order "stopping the testing until the matter could be properly resolved." *Id.* at 132. Several

---

**2.** It is well settled that a decision of the PLRB must be upheld if the PLRB's findings are supported by substantial evidence and if its conclusions of law drawn from those facts are reasonable, not capricious, arbitrary or illegal. *Joint Bargaining Committee of Pennsylvania Social Services Union v. Pennsylvania Labor Relations Board,* 503 Pa. 236, 469 A.2d 150 (1983); *Abing-*

*ton Transportation Association v. Pennsylvania Labor Relations Board,* 131 Pa.Cmwlth. 267, 570 A.2d 108 (1990).

**3.** As of this date, no post–1981 hirees have reached retirement age.

months later, the chief issued a new order directing the reinstatement of the minimum fitness standards and the union filed a charge of an unfair labor practice. The city argued that the charge was untimely filed, but the PLRB found that the cessation of the policy, followed by the reestablishment of the prior policy gave the union a "second clock." *Easton* is not dispositive because 1) FOP never objected to Ordinance 3A–1981 and 2) the City never rescinded the ordinance, temporarily or otherwise. Thus, unlike *Easton*, no new cause of action ever arose here.

■ The limitations period for filing of unfair labor practice charges is triggered when the complainant has a reason to believe that an unfair practice has occurred. *Commonwealth v. Pennsylvania Labor Relations Board*, 64 Pa.Cmwlth. 84, 438 A.2d 1061 (1982). Therefore, we hold that the PLRB correctly concluded that FOP's filing of the unfair labor practice charge in 1995 was untimely.

■ FOP also argues, in its brief, that the City's actions toll the statute of limitations by estoppel. Even though this issue was not properly preserved, we note that in *Nyo v. Pennsylvania Labor Relations Board*, 53 Pa.Cmwlth. 646, 419 A.2d 244 (1980), we held:

> It is clear . . . that a party will be estopped from invoking a statute of limitations only where he has induced the adverse party to relax his vigilance by some affirmative "fraud, deception or concealment of fact."

*Id.* 419 A.2d at 246, citing *Walters v. Ditzler*, 424 Pa. 445, 449, 227 A.2d 833, 835 (1967). There exists no competent evidence that the City engaged in any affirmative fraud, deception or concealment of fact. The record clearly establishes that FOP knew or should have known that Ordinance 3A–1981 was enacted on February 11, 1981. FOP's representatives were present at the meeting when the ordinance was passed and reported to the members of FOP that the ordinance had been enacted and no objections were taken or unfair labor practice charge file with PLRB. As aptly stated in *Public School Building Authority v. Noble Quandel Co.*, 137 Pa.Cmwlth. 252, 585 A.2d 1136, 1141 (1991):

In order to apply the doctrine of equitable estoppel to a Commonwealth agency, the party sought to be estopped 1) must have intentionally or negligently misrepresented some material fact, 2) knowing or having reason to know that the other party would justifiably rely on the misrepresentation and 3) inducing the party to act to his detriment because of justifiable reliance on the misrepresented fact.

(Citation omitted). Here, no evidence exists to show that the City intentionally or negligently misrepresented any fact to FOP or that FOP justifiably relied on any alleged misrepresentation. Because each element is strictly construed, we hold that FOP did not prove that the doctrine of equitable estoppel should apply here even if the issue had been properly preserved.

Accordingly, we affirm.

### ORDER

AND NOW, this 20th day of June, 1997, the order of the Pennsylvania Labor Relations Board in the above-captioned matter is hereby affirmed.