# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Dr. Mary Ann Dailey,           :
                    Petitioner     :
                               :
             v.           :   No. 413 C.D. 2016
                               :   Argued:  September 13, 2016
Pennsylvania Labor Relations Board,  :
                Respondent   :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge

**OPINION BY**
**JUDGE COHN JUBELIRER**                **FILED: October 14, 2016**

Dr. Mary Ann Dailey (Dailey) petitions for review of an order of the Pennsylvania Labor Relations Board (Board) dismissing Dailey's Exceptions and making final a June 16, 2015 Decision of the Board's Secretary to not issue a complaint in response to Dailey's Charge of Unfair Labor Practices (Charge). Dailey argues that the Board abused its discretion and/or erred by not issuing a complaint against the Association of Pennsylvania State, College and University Faculties (APSCUF) because: (1) APSCUF violated Section 1201(b)(1) of the Public Employe Relations Act (PERA)[1] by coercing members to assist it in its activities through inflating membership dues; (2) the Board's precedent establishing that "internal union matters" are outside its jurisdiction conflicts with

---

[1] Act of July 23, 1970, P.L. 563, as amended, 43 P.S. § 1101.1201(b)(1).

PERA; and (3) even if the "internal union matters" limitation is legal, APSCUF's conduct was not an internal union matter. Because the Board's conclusion that APSCUF's imposition of dues, as applied to Dailey, does not constitute an unfair labor practice is not clearly erroneous, and because the Board's "internal union matters" jurisdictional limitation complies with the law, we affirm.

Dailey filed the Charge on May 18, 2015, alleging that APSCUF violated Section 1201(b)(1) of PERA, 43 P.S. § 1101.1201(b)(1). (R.R. at 1a.) According to the allegations, Dailey has been a member of APSCUF since 2006 and pays annual dues to APSCUF of 1.15 percent of her salary through automatic deductions from her pay check. (Id. at 3a.) Included in annual dues payments is $25 that has, at least for the past 18 years, been rebated by APSCUF to members. (Id. at 3a-4a.) APSCUF provides members with dues rebate designation cards (designation card) that allow members to elect to either (1) receive the $25 rebate; (2) donate the rebate to APSCUF's political action committee; or (3) direct that the rebate be retained by APSCUF's treasury. (Id. at 3a.) If no election is made by the member, the $25 is retained by APSCUF's treasury. (Id.) Sent to members together with the designation card is a brochure on APSCUF's political action committee. (Id. at 3a.) The brochure and other associated materials detail an annual "dues rebate campaign" whereby the political action committee asks union members to voluntarily designate that the rebate be paid directly to the political action committee. (Id. at 176a.) Information on the campaign was also available on APSCUF's website. A printout of a webpage, last updated some time in 2014 and attached to her Charge as an exhibit, states that "[i]f you haven't yet filled out a Dues Rebate card, please pick one up from the local APSCUF Chapter office or see your local [political action committee] Chair on campus." (Id. at 172a.)

2

Dailey alleges that the dues rebate process is intended to raise money for APSCUF's political activity, and is designed to compel APSCUF members into contributing $25 more in annual dues than is necessary in violation of Sections 401 and 1201(b)(1) of PERA, 43 P.S. §§ 1101.401, 1101.1201(b)(1). (Id. at 3a-4a.) Dailey further alleges that she had to personally request a designation card in 2014, and that the deadline to elect a designation for that year had passed by the time she received the designation card. (Id. at 3a.) She further alleges that she did not receive a designation card at all in 2015. (Id.) Dailey argues that she was compelled to support APSCUF's treasury in both 2014 and 2015 with $25 beyond what was reasonably necessary.[2]

Section 401 of PERA establishes the rights of public sector employees and provides:

> It shall be lawful for public employes to organize, form, join or assist in employe organizations or to engage in lawful concerted activities for the purpose of collective bargaining or other mutual aid and protection or to bargain collectively through representatives of their own free choice and such employes shall also have the right to refrain from any or all such activities, except as may be required pursuant to a maintenance of membership provision[3] in a collective bargaining agreement.

---

[2] While the Charge addresses both 2014 and 2015 dues payments, Dailey acknowledges that the 2014 overpayment falls outside the applicable statute of limitations. (Dailey's Br. at 6 n.2, citing Section 1505 of PERA, 43 P.S. § 1101.1505.) Therefore, only the 2015 overpayment is at issue here.

[3] A "maintenance of membership" provision is defined by Section 301(18) of PERA as follows:

> "Maintenance of membership" means that all employes who have joined an employe organization or who join the employe organization in the future must remain members for the duration of a collective bargaining agreement so providing with the proviso that any such employe or employes may resign from

**(Footnote continued on next page…)**

3

43 P.S. § 1101.401. Section 1201 of PERA enforces Section 401 by prohibiting certain unfair practices. Subsection (b)(1) of Section 1201 provides:

(b) Employe organizations, their agents, or representatives or public employes are prohibited from:
    (1) Restraining or coercing employes in the exercise of the rights guaranteed in [Section 401] of this act.

43 P.S. § 1101.1201(b)(1).

The Secretary of the Board issued a Decision on June 16, 2015, declining to issue a complaint in response to Dailey's Charge. (Secretary's Decision, R.R. at 247a-48a.) The Secretary concluded that the allegations did not rise to the level of an unfair practice under Section 1201(b)(1) of PERA and that the allegations involve internal union matters outside the Board's unfair practice jurisdiction. (Id. at 247a.) The Secretary construed Dailey's Charge as essentially putting forth allegations of breach of the duty of fair representation,[4] which is within the exclusive jurisdiction of courts of common pleas. (Secretary's Decision, R.R. at 247a (citing Case v. Haz[le]ton Area Educational Support Personnel Association (PSEA/NEA), 928 A.2d 1154, 1161 (Pa. Cmwlth. 2007)).)

_____

**(continued…)**
    such employe organization during a period of fifteen days prior to the expiration of any such agreement.

43 P.S. § 1101.301(18).
    [4] A union is a trustee for the rights of its members and owes its members a duty of fair representation. Case v. Haz[le]ton Area Educ. Support Pers. Ass'n (PSEA/NEA), 928 A.2d 1154, 1158 (Pa. Cmwlth. 2007). That duty is breached when the union "acts in bad faith toward its members, and violates the fiduciary trust created from the principal-agent relationship." Id. Jurisdiction over a cause of action alleging breach of duty lies with the appropriate court of common pleas, not the Board. Id. at 1160-61.

Dailey timely filed Exceptions to the Secretary's Decision to the Board on July 6, 2015. (R.R. at 249a-52a.) Therein, Dailey argued that the Secretary's resolution was arbitrary, capricious, and contrary to law because: (1) APSCUF's inflation of membership dues qualifies as an unfair labor practice; (2) the internal union matter jurisdictional limitation often utilized by the Board is inappropriate, and even if appropriate in some contexts, its use is inappropriate in the case at bar; and (3) APSCUF's activities were coercive and extend beyond a mere failure to represent. (R.R. at 250a-51a.) The Board, considering the factual allegations in the Charge as true, responded to Dailey's Exceptions as follows.

> [Dailey] alleges in the [E]xceptions that the Secretary erred in dismissing the Charge because the dues rebate campaign coerces her into financially assisting APSCUF beyond what is required under the maintenance of membership provision in the parties' collective bargaining agreement. In this regard, [Dailey] asserts that the $25 remains in APSCUF's dues fund if the members do not respond within the deadline for the dues rebate. [Dailey] further asserts that she did not receive the dues rebate election form in 2015 until after the deadline, and thus her dues remained in APSCUF's dues fund.
>
> Pursuant to Section 401 of PERA, public sector employes have the right to choose to become union members or to refrain from doing so. 43 P.S. § 1101.401. Section 1201(b)(1) of PERA provides that an employe organization is prohibited from "[r]estraining or coercing employes in the exercise of the rights guaranteed in Article IV of [PERA]." 43 P.S. § 1101.1201(b)(1). Nothing in [Dailey]'s Charge supports the notion of restraint or coercion for the stated purpose that would give rise to a violation of Section 1201(b)(1) of PERA.
>
> [Dailey] alleges that the dues rebate campaign coerces her into financially assisting APSCUF. However, the payment of membership dues is a corollary to an employe's decision to become a union member and [Dailey] alleged that she has been a member of APSCUF since 2006 thereby consenting to the payment of membership dues. Further, [Dailey] alleged that APSCUF's dues rebate campaign provides the employes with the option of either donating the $25 to APSCUF's political action committee, allowing the $25 to remain in APSCUF's dues fund, receiving a rebate or choosing not to fill out the dues rebate form altogether. Since at least 2012, the employes' rebate

5

election made by April 1 of any given year was effective "during the current fiscal year and on any subsequent occasion." (Exhibit F[, R.R. at 178a.]) Because APSCUF's dues rebate campaign does not affect membership rights and provides the employes with options regarding disposition of the rebate, [Dailey] has failed to state a cause of action under Section 1201(b)(1) of PERA.

With regard to [Dailey]'s allegation that APSCUF is overcharging its members $25 in dues in order to offer the rebate, the amount of dues charged union members is an internal union matter over which the Board does not have jurisdiction. See Rudnick v. AFSCME Dist[.] Council 47, 29 PPER ¶ 29144 (Final Order, 1998) (employe's claim involving union's denial of access to names and addresses of members who overpaid dues was an internal union matter not within the Board's jurisdiction). Further, [Dailey]'s allegations make clear that only voluntary contributions are forwarded to APSCUF's political action committee, and [Dailey]'s general allegation that APSCUF is utilizing membership dues for an unauthorized purpose does not fall within the scope of unfair practices set forth in Article XII of PERA. See Borough of Ambridge v. Local Union 1051, AFSCME, 17 PPER ¶ 17075 (Final Order, 1986) (Board has authority to remedy only those acts that constitute a violation of Article XII); see also PLRB v. Mangino, 3 PPER 330 (Nisi Order of Dismissal, 1973) (same). Accordingly, the Secretary did not err in declining to issue a complaint and dismissing the Charge.

(Board Decision at 1-2.) Dailey now petitions this Court for review.

Before addressing Dailey's arguments on appeal, we must address the Board's argument that Dailey's Petition for Review is not justiciable because the issues raised have become moot. According to the Board's Brief to this Court, APSCUF advised the Board after the Board filed its Final Order that APSCUF paid to Dailey a $25 rebate, making the issues raised in the Charge moot. (Board's Br. at 13.) In response, Dailey attached to her Reply Brief, a copy of the check paid from APSCUF that shows APSCUF sent her a $25 check on May 19, 2015, *the day after* she filed the instant Charge. (Dailey's Reply Br. at Ex. A.) Dailey argues

6

that notwithstanding the payment, the Board's Decision should be reviewed by this Court because the conduct can be repeated. We agree with Dailey.

> The mootness doctrine addresses the timing of a case and
>
> involve litigants who clearly had standing to sue at the outset of the litigation. The problems arise from events occurring after the lawsuit has gotten under way changes in the facts or in the law which allegedly deprive the litigant of the necessary stake in the outcome. The mootness doctrine requires that "an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed."

In re Gross, 382 A.2d 116, 119 (Pa. 1978) (quoting G. Gunther, Constitutional Law 1578 (9th ed. 1975)). There are two exceptions to the mootness doctrine: the first is when the issue presented "is one of great public importance;" and the second is when the issue "is one that is capable of repetition yet evading review." Ass'n of Pa. State Coll. & Univ. Faculties v. Pa. Labor Relations Bd., 8 A.3d 300, 305 (Pa. 2010). This is a matter that falls into the second exception as it is capable of repetition yet likely to evade review because, should the Court conclude that this issue is moot, APSCUF could avoid review of similar conduct in perpetuity by paying a complainant a rebate the day after any charge is filed. This is precisely the type of behavior the "capable of repetition yet evading review" exception to the mootness doctrine was intended to prevent. Id. Because the issues raised by Dailey are not moot, we shall proceed to address the issues raised by Dailey on appeal.

Generally, "when reviewing a decision of the Board, our review is limited to determining whether there has been a violation of constitutional rights, an error of law, procedural irregularity, or whether the findings of the agency are supported by substantial evidence." Borough of Ellwood City v. Pa. Labor Relations Bd., 998

7

A.2d 589, 594 (Pa. 2010). Here, we are reviewing the Board's Decision to not issue a complaint pursuant to Section 1302 of PERA,[5] 43 P.S. § 1101.1302. The issuance of a complaint lies with the discretion of the Board and is "reviewable only for an abuse of that discretion." Ass'n of Pa. State Coll. & Univ. Faculties, 8 A.3d at 304. Thus, our review is limited to determining "whether there has been a manifest and flagrant abuse of discretion or a purely arbitrary execution of the [Board]'s duties or functions." Id. at 305 (quotation omitted). In conducting our review, we remain cognizant of the Pennsylvania Supreme Court's conclusion that "[t]he Board's determination in discharging its duty under PERA is entitled to a measure of deference from reviewing courts." Id. We cannot substitute our judgment for the judgment of the Board, whose expertise makes it more qualified to assess factual matters within its field. Id. Regarding the Board's interpretation of PERA, it is well established that the Board's interpretation of its governing statute "is to be given 'controlling weight unless clearly erroneous.'" Lancaster Cnty. v. Pa. Labor Relations Bd., 94 A.3d 979, 986 (Pa. 2014).[6]

_____

[5] Section 1302 of PERA provides, in relevant part:

> Whenever it is charged by any interested party that any person has engaged in or is engaging in any such unfair practice, the board, or any member or designated agent thereof, shall have authority to issue and cause to be served upon such person a complaint, stating the charges in that respect, and containing a notice of hearing before the board, or any member or designated agent thereof, at a place therein fixed, not less than five days after the serving of said complaint

43 P.S. § 1101.1302.

[6] Dailey, citing Cope v. Insurance Commissioner of Pennsylvania, 955 A.2d 1043, 1048 (Pa. Cmwlth. 2008), argues that our standard of review is de novo as the matter only raises issues of law. While Dailey is correct that we review all questions of law under a de novo standard, S & H Transport, Inc. v. City of York, 102 A.3d 599, 601 n.4 (Pa. Cmwlth. 2014), we apply the de novo standard in the context of a statute enforced, in the first instance, by an agency as follows.

**(Footnote continued on next page…)**

8

Cognizant of our deferential standard of review, we will first address Dailey's argument that the Board abused its discretion by not issuing a complaint based on its conclusion that "[n]othing in [Dailey]'s Charge supports the notion of restraint or coercion for the stated purpose that would give rise to a violation of Section 1201(b)(1) of PERA." (Board Decision at 2.) Dailey argues that the Board misconstrues Section 401 of PERA by understanding the provision as merely guaranteeing the right of an employee to decline to join a union, when the plain language states that employees also have the right to not assist the union in engaging in its activities. Dailey contends that "[b]ecause APSCUF has deftly tied the $25 contribution to the obligation to pay dues as a condition of employment, APSCUF members have no choice but to surrender their money to APSCUF or risk losing their jobs." (Dailey's Br. at 20 (emphasis in original).) Relatedly, Dailey argues that the Board's decision presupposes that Dailey received notice of the rebate options and was given a meaningful opportunity to elect to receive the refund, which was not the case in 2015.

---

**(continued…)**

> With respect to issues involving the interpretation of a statute, an administrative agency's interpretation is to be given controlling weight unless clearly erroneous. However, when an administrative agency's interpretation is inconsistent with the statute itself, or when the statute is unambiguous, such administrative interpretation carries little weight. Appreciating the competence and knowledge an agency possesses in its relevant field, our Court opined that an appellate court will not lightly substitute its judgment for that of a body selected for its expertise whose experience and expertise make it better qualified than a court of law to weigh facts within its field.

Lancaster Cnty., 94 A.3d at 986 (quotations and citations omitted). Furthermore, our Supreme Court has emphasized that a "high level of deference is especially significant in the complex area of labor relations." Id.

9

The Board contends that the facts as alleged show no coercion or restraint within the meaning of Section 1201(b)(1) of PERA because Dailey had notice of her ability to elect to receive the 2015 rebate as early as 2014. The Board notes that the designation card provides for employees to elect a designation effective "during the current fiscal year and on any subsequent occasion," which obviates the need for an employee to annually complete a card. (R.R. at 178a.) The Board further notes that Dailey has been a member of APSCUF since 2006 and voluntarily consented to assist the union through the payment of membership dues.

While our Supreme Court has held that deducting union dues from an employee's salary "arguably" violates Section 1201(b)(1) "if done without valid authorization by the employes affected," Hollinger v. Department of Public Welfare, 365 A.2d 1245, 1249 (Pa. 1976), there is no allegation that APSCUF was not authorized to withhold 1.15 percent of a member's pay, which includes the $25 at issue, for union dues. According to the Collective Bargaining Agreement (CBA), the payment of dues while an employee is a member of APSCUF is a condition of employment. (R.R. at 99a.) However, an APSCUF member may resign from membership "during the period of fifteen days prior to the expiration of the [CBA]." (Id.) By choosing[7] to remain a member of APSCUF, Dailey voluntarily agreed to provide 1.15 percent of her salary to APSCUF as a condition of her employment. The fact that she did not receive a $25 rebate on that 1.15 percent does not amount to coercion or restraint upon her rights when the *entire*

---

[7] The CBA now in effect was entered into on June 11, 2013 and made effective from July 1, 2011. (R.R. at 137a.) The previous CBA presumably expired on or before June 30, 2011, and, therefore, Dailey had at least one opportunity to resign.

10

1.15 percent was voluntarily deducted as dues and all of Dailey's dues went to APSCUF's general fund.

Dailey's allegation that she did not receive a designation card in the mail in 2015 does not change our analysis. Dailey alleges that she has been a member of APSCUF for nearly a decade prior to the filing of the Charge and that the dues rebate campaign has occurred each year of her membership. (Id. at 4a.) Dailey, therefore, had multiple opportunities to elect a designation on a card she received in the mail, speak to her union representative about electing a designation at any time, or to resign from APSCUF. Dailey chose to do none of these things. We therefore conclude that the Board's interpretation of Section 1201(b)(1) of PERA and its application to the facts is not clearly erroneous and is entitled to deference. City of Erie v. Pa. Labor Relations Bd., 32 A.3d 625, 631 (Pa. 2011).

Next, Dailey argues that the Board abused its discretion by deciding to not issue a complaint based, in part, on its "self-imposed 'internal union matters' jurisdictional bar, which is contrary to PERA." (Dailey's Br. at 7.) Dailey contends that the "internal union matters" limitation is particularly inapplicable in Pennsylvania because a member wishing to avoid paying the $25 in excess dues has no ability to do so because members cannot resign from APSCUF for virtually the entire term of a collective bargaining agreement pursuant to PERA's maintenance of membership provision, 43 P.S. § 1101.301(18). Dailey asks this Court to "correct [the Board]'s insistence on avoiding 'internal union matters,' which has no place in Pennsylvania law." (Dailey's Br. at 12.)

Our case law has long established the right of "unions and other voluntary associations to govern their internal affairs without judicial interference." Pa. Labor Relations Bd. v. E. Lancaster Cnty. Ed. Ass'n, 427 A.2d 305, 308 (Pa.

11

Cmwlth. 1981) (Eastern Lancaster). It does not follow, however, that all matters involving the relationship between a union and its members are immune from judicial review: conduct that limits the ability of members to exercise their rights, or that leads to results that frustrates national or state labor policy, may be reviewed by the Board or the courts. See, e.g., Chambersburg Borough v. Pa. Labor Relations Bd., 106 A.3d 212, 225 (Pa. Cmwlth. 2014) (concluding that a court may interfere in a union's internal disciplinary actions when the result of the discipline "frustrate[s] the Commonwealth's policy against secondary boycotts"), appeal dismissed as improvidently granted, 139 A.3d 189 (Pa. 2016); Allen Bradley Co. v. Nat'l Labor Relations Bd., 286 F.2d 442, 446 (7th Cir. 1961) (concluding that the broad power of unions to "prescrib[e] rules relative to the acquisition and retention of its members . . . goes beyond any permissible limit when it imposes a sanction upon a member because of his exercise of a right guaranteed by the [National Labor Relations Act (NLRA)[8]]").

In Eastern Lancaster, a non-union member challenged the union's decision to agree to an amendment to a CBA that provided for a new dental plan. Eastern Lancaster, 427 A.2d at 307. All employees, union and non-union alike, were required to contribute to the dental plan. Id. The complainant, not wanting the dental plan, asked the employer to not deduct the cost of the dental plan from his pay checks. Id. When the employer refused to acquiesce to the complainant's request, the complainant filed a charge with the Board alleging a violation of Section 1201 of PERA and a violation of the duty of fair representation. Id. The complainant objected to the procedure used to adopt the amendment and to "the union's membership requirement that annual dues be paid not only to the local

---

[8] 29 U.S.C. §§ 151 – 169.

12

organization but to the statewide and national affiliates as well." Id. The Board dismissed the charges, and we affirmed. We held that the process by which amendments to a CBA are ratified is an internal union matter, that the process did not breach the duty of fair representation, and that the process used was not an unfair labor practice governed by Section 1201. Id. at 308, 310. We then addressed the complainant's argument regarding dues by holding "the union's affiliation with the statewide and national organizations and *the commensurate increase in annual dues is*, like the matter of ratification procedure, *an internal union affair*." Id. at 310 (emphasis added).

While Eastern Lancaster does not address the precise issue raised by Dailey, and we have found no other case that does, this Court's reasoning in that case lends support to the Board's conclusion that membership dues assessments are internal union matters not governed by Section 1201 of PERA. When, as here, no state law precedent is directly controlling, we are counseled by our Supreme Court to look to federal interpretations of the NLRA addressing provisions similar to those found in PERA. Office of Admin. v. Pa. Labor Relations Bd., 916 A.2d 541, 550 (Pa. 2007). To that end, the Board's position aligns with federal interpretations of Sections 7 and 8(b)(1) of the NLRA, the federal analogues to Sections 401 and 1201(b)(1) of PERA, respectively.[9] See Nat'l Labor Relations Bd. v. Allis-

---

[9] Section 7 of the NLRA provides:

> Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a)(3) of this title.

**(Footnote continued on next page…)**

<u>Chalmers Mfg. Co.</u>, 388 U.S. 175, 195 (1967) (discussing the congressional debates on Section 8(b)(1)(A) of the NLRA and noting "that Congress did not propose any limitations with respect to the internal affairs of unions, aside from barring enforcement of a union's internal regulations to affect a member's employment status"); <u>Serv. Employees Local 535 (N. Bay Ctr.)</u>, 287 NLRB 1223, 1226 (1988) ("One subject specifically regarded by Congress as an internal affair of labor organizations is that of the amount of fees established and assessed on employees").[10] While Section 8(5) of the NLRA authorizes scrutiny of "excessive

---

**(continued…)**

29 U.S.C. § 157. Section 8(b)(1) of the NLRA provides in relevant part:

> It shall be an unfair labor practice for a labor organization or its agents--
>> (1) to restrain or coerce (A) employees in the exercise of the rights guaranteed in section 157 of this title:

29 U.S.C. § 158(b)(1).

[10] In discussing the legislative history of the NLRA, the United States Supreme Court stated:

> As originally passed, § 7(b) of the House bill guaranteed union members the "right to be free from unreasonable or discriminatory financial demands of" unions. Similarly, § 8(c) of the bill, the so-called "bill of rights for union members," set out 10 protections against arbitrary action by union officers, one of which made it an unfair labor practice for a union to impose initiation fees in excess of $25 without [National Labor Relations Board] approval, or to fix dues in amounts that were unreasonable, nonuniform, or not approved by majority vote of the members. In addition, § 304 of the bill prohibited unions from making contributions to or expenditures on behalf of candidates for federal office. The conferees adopted the latter provision and agreed to a prohibition on "excessive" initiation fees, but the Senate steadfastly resisted any further attempts to regulate internal union affairs. Referring to the House provisions, Senator Taft explained:
>> [T]he Senate conferees refused to agree to the inclusion of this subsection in the conference agreement since they felt that it was unwise to authorize an agency of the Government to undertake such elaborate policing of the internal affairs of unions as this section contemplated. ... In the opinion of the Senate conferees the language which protected an employee from

**(Footnote continued on next page…)**

or discriminatory" fees when such is a "condition precedent to becoming a member of" a union, 29 U.S.C. § 158(b)(5), neither the NLRA nor PERA authorizes judicial scrutiny of members' dues when the union's internal action does not interfere with a members' employment status or the exercise of statutory or constitutional rights.

Further, the Board's approach serves multiple purposes: it protects union *members* from infringements upon their rights under Section 401 of PERA, protects *unions* from government intrusion in internal matters, and encourages *self-government* by unions. Nothing in PERA implies that the General Assembly intended for the Board to be in the business of determining the *proper amount* of dues a union assesses on its members. Therefore, it is consistent with Section 1201(b)(1) of PERA that the Board should not act in a manner that displaces internal union democratic decision-making, unless the union act under review interferes with a member's employment status or otherwise restricts the exercise of rights established in Section 401 of PERA. Thus, because the Board's use of the "internal union matters" approach aligns with our understanding of the intent of Sections 401 and 1201(b) of PERA, we cannot say that the Board's application of its circumscribed jurisdiction is clearly erroneous.

---

**(continued…)**

> losing his job if a union expelled him for some reason other than nonpayment of dues and initiation fees, uniformly required of all members, was considered sufficient protection.

Commc'ns Workers of Am. v. Beck, 487 U.S. 735, 757 (1988) (citations omitted).

Dailey argues that we should evaluate this case differently because PERA, unlike the NLRA, allows for maintenance of membership provisions that restrain the ability of employees to resign from a union. However, Dailey had the opportunity to resign from the Union after she was aware of the Union's dues including the $25 rebate, and she did not do so. Thus, the maintenance of membership provision is not relevant to this situation.

Dailey argues in the alternative that, even if the internal union matters limitation is determined to be acceptable in some contexts, the Board abused its discretion by applying it here as APSCUF's dues practices are not purely an internal union matter. Dailey argues that because the payment of the $25 is a condition of employment under the CBA, it cannot be considered an internal union matter. Dailey argues that the cases where the Board applied the internal union matter limitation involve the "exercise of union-provided rights, such as the right to vote on union action." (Dailey's Br. at 16.) In response, the Board argues that Dailey has not cited to any authority, statutory or otherwise, supporting its argument "that the Board is empowered to determine the proper calculation of membership dues that a union may charge its members." (Board's Br. at 10.)

We cannot find that the Board abused its discretion under these circumstances. While we have not found Board decisions employing the internal union matter limitation to cases involving dues, we have also not found a single case where the Board has interfered with a union's right to determine the amount of dues upon members. We are to give controlling weight to the Board's interpretation of PERA, unless it is clearly erroneous. Lancaster Cnty., 94 A.3d at 986. Further, we agree with the Board that APSCUF's dues collection approach did not act as a barrier to Dailey's exercise of her rights under Section 401 and was

16

not actionable under Section 1201(b)(1). As such, APSCUF's decision with regard to its dues assessment was an internal union matter not subject to judicial interference. We therefore conclude that the Board did not abuse its discretion by not interfering with APSCUF's internal decision to set dues at a certain level and annually rebate $25 to members.

For the foregoing reasons, we conclude that the Board did not err or abuse its discretion when it decided to not issue a complaint.

_____
**RENÉE COHN JUBELIRER,** Judge

17

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Dr. Mary Ann Dailey,          :
          Petitioner     :
                            :
          v.            :    No. 413 C.D. 2016
                            :
Pennsylvania Labor Relations Board,  :
          Respondent   :

# **O R D E R**

NOW, October 14, 2016, the Order of the Pennsylvania Labor Relations Board, entered in the above-captioned matter, is **AFFIRMED**.

_____
**RENÉE COHN JUBELIRER,** Judge