IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Quentin Salem,                          :
                        Petitioner      :
                                        :
            v.                          :
                                        :
Pennsylvania Labor Relations Board,     :    No. 1930 C.D. 2016
                        Respondent      :    Submitted: March 31, 2017


OPINION NOT REPORTED

MEMORANDUM OPINION
PER CURIAM                              FILED: August 8, 2017


Quentin Salem (Salem), pro se, petitions this Court for review of the
Pennsylvania Labor Relations Board's (Board) November 15, 2016 Final Order
making final and absolute the Board Secretary's (Secretary) August 26, 2016 decision
declining to issue a complaint and dismissing Salem's unfair labor practice charge
(Charge) as untimely. Essentially, the issue before the Court is whether Salem's
Charge against his employer, Pennsylvania Higher Education Assistance Agency
(PHEAA), was timely filed.[1] Upon review, we affirm.

The relevant facts in this case are not in dispute. Salem was employed
by PHEAA as a credit report processing clerk beginning in August 2014. He was a
member of the American Federation of State, County and Municipal Employees,
District Council 13, Local 1224 (AFSCME Local 1224), subject to a Master

---

[1] In his Statement of Questions Involved, Salem presented five questions: (1) was the statute
of limitations tolled until April 26, 2016; (2) what are the material facts and termination reasons
when the protected activity was committed; (3) what constitutes a retaliation claim; (4) is a
proffered non-discriminatory reason for the adverse action a sufficient defense, regardless of its
alleged pretextual quality; and, (5) is PHEAA estopped from invoking the statute of limitations.
Because only questions 1 and 5 pertain to the timeliness issue upon which the Board's decision is
based, we combined them for review. The other issues Salem raised are not properly before the
Court as they in no manner relate to the timeliness issue.

Agreement and a February 20, 2015 PHEAA Clerical Wage Employee Agreement (Agreement). *See* Certified Record (C.R.)[2] at 12-22.

On March 9, 2015, PHEAA issued Salem a memorandum that stated, in pertinent part:

> This memo will confirm our conversation that you were provided a formal coaching for violation of the Acceptable Use Policy [(Policy)]. Specifically, excessive internet usage occurred outside designated break and lunch periods.
>
> This discussion constitutes your final warning on this matter; failure to adhere to [PHEAA's] standards will lead to further disciplinary action up to and including termination.

C.R. at 8. In May 2015, PHEAA denied Salem a promotion to Customer Service Representative 1 (CSR 1). Salem met with PHEAA's Human Resources (HR) representatives, including Rachel Gojmerac (Gojmerac), to discuss the Policy and the promotion denial.

In June 2015, during work hours on a PHEAA computer, Salem performed internet searches of Gojmerac and gun images which PHEAA "flagged as threatening." C.R. at 6. On July 2, 2015, PHEAA representatives met with Salem regarding those internet searches. By **July 2, 2015** letter, PHEAA notified Salem: "This is to confirm that you have been removed from your clerical wage position within the Credit Bureau Reporting Department, effective immediately, due to your violation of [the P]olicy. Specifically, you have used PHEAA internet resources for personal use in an inappropriate manner, which violates the [Policy]." C.R. at 9. The letter reflects that it was copied to AFSCME Local 1224's president. *See* C.R. at 9.

On **August 9, 2016**, Salem filed the Charge, wherein he asserted that PHEAA violated Section 1201(a)(1) and (3) of the Public Employe Relations Act

---

[2] Record references herein are to the certified record, since Salem did not comply with Pennsylvania Rule of Appellate Procedure 2173 relative to numbering his reproduced record pages.

(PERA),[3] 43 P.S. § 1101.1201(a)(1), (3), and that he had filed a grievance relating thereto.[4]  *See* C.R. at 1; *see also* C.R. at 2-7.

By August 26, 2016 letter, the Secretary informed Salem that no complaint would be issued on his Charge because, pursuant to Section 1505 of PERA, 43 P.S. § 1101.1505, it was untimely filed.  *See* C.R. at 23.  On September 1, 2016, Salem filed exceptions to the Secretary's August 26, 2016 letter.  *See* C.R. at 25-32.  On November 15, 2016, the Board issued its Final Order upholding the Secretary's August 26, 2016 decision.  *See* C.R. at 33-35.  On November 30, 2016, Salem appealed to this Court.[5]

Salem argues that the Board erred by concluding that the statute of limitations for the Charge began to run when he was discharged on July 2, 2015, because "it was only in the April 26[, 2016 grievance] meeting that [Salem] knew of the cause of termination, and thus the unfair labor practice."  C.R. at 7; *see also* C.R.

---

[3] Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §§ 1101.101-1101.2301.  Section 1201(a)(1) of PERA prohibits public employers from "[i]nterfering, restraining or coercing employe[e]s in the exercise of [his/her right to engage in lawful union activities]."  43 P.S. § 1101.1201(a)(1).  Section 1201(a)(3) of PERA prohibits public employers from "[d]iscriminating in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any employe organization."  43 P.S. § 1101.1201(a)(3).

[4] On October 9, 2015, Salem filed Grievance No. 90-1224-51607 seeking reinstatement and back pay for his July 2, 2015 employment termination for "excessive [i]nternet usage, no further information given," and PHEAA's violation of the Agreement's progressive discipline provisions.  C.R. at 10.  Salem filed Grievance No. 90-1224-51606 seeking a promotion and compensation due to PHEAA's failure to promote him on October 7, 2015.  *See* C.R. at 11.

[5] Here, we are reviewing the Board's [d]ecision to not issue a complaint pursuant to Section 1302 of PERA, 43 P.S. § 1101.1302.  The issuance of a complaint lies with the discretion of the Board and is 'reviewable only for an abuse of that discretion.'  *Ass'n of Pa. State Coll. & Univ. Faculties* [*v. Pa. Labor Relations Bd.*], 8 A.3d [300,] 304 [(Pa. 2010)].  Thus, our review is limited to determining 'whether there has been a manifest and flagrant abuse of discretion or a purely arbitrary execution of the [Board]'s duties or functions.'  *Id.* at 305 (quotation omitted).

*Dailey v. Pa. Labor Relations Bd.*, 148 A.3d 920, 926 (Pa. Cmwlth. 2016) (footnote omitted).

at 26. Salem further contends that since PHEAA failed "to provide a proper explanation or even any details" about why he was discharged, it is estopped from invoking the statute of limitations. *See* C.R. at 27.

Section 1302 of PERA, 43 P.S. § 1101.1302, authorizes the Board to issue unfair labor practice complaints against public employers. Section 1505 of PERA provides, in relevant part, however, that "[n]o . . . charge shall be entertained which relates to acts which occurred . . . more than four months prior to the filing of the . . . charge." 43 P.S. § 1101.1505. This Court has expressly held that "the four-month statute of limitations in Section 1505 [of PERA] bars a complainant from filing an unfair labor practice charge based upon evidence which has been in [his] possession for more than four months." *Thomas v. Pa. Labor Relations Bd.*, 483 A.2d 1016, 1018 (Pa. Cmwlth. 1984). Thus, "[t]he four-month limitations period for the filing of an unfair labor practice charge under Section 1505 of the PERA is triggered when the complainant has reason to believe that the unfair labor practice has occurred." *Lancaster Cnty. v. Pa. Labor Relations Bd.*, 62 A.3d 469, 473 (Pa. Cmwlth. 2013).

> Moreover,
>
> in *Nyo v. Pennsylvania Labor Relations Board, . . .* 419 A.2d 244 ([Pa. Cmwlth.] 1980), we held:
>
> > It is clear . . . that a party will be estopped from invoking a statute of limitations only where he has induced the adverse party to relax his vigilance by some affirmative 'fraud, deception or concealment of fact.'
>
> *Id.* [] at 246 ([quoting] *Walters v. Ditzler, . . .* 227 A.2d 833, 835 ([Pa.] 1967).

*Fraternal Order of Police Haas Mem'l Lodge No. 7 v. Pa. Labor Relations Bd.*, 696 A.2d 873, 876 (Pa. Cmwlth. 1997).

Here, Salem represented in his Charge that, after he received the March 2015 final warning for excessive internet usage and he was denied a promotion to CSR 1 in May 2015, he began inquiring of and met with HR about performance standards and evaluations, and he researched the Master Agreement, the Policy and publicized statistics online. *See* C.R. at 4-6. Salem declared that he was eventually told that he was denied the promotion on the basis of his March 2015 discipline, and that he could not dispute the promotion or his discipline. *See* C.R. at 5. Salem claimed that he disputed his final warning and raised a disparate treatment issue in those meetings, but it was during a July 1, 2015 meeting with HR that he "officially objected to the March [f]inal [w]arning" because "the [Policy] was not violated based on his reading of it." C.R. at 5. He recounted that he had also asked HR for more information about his March violation in that meeting.

In his Charge, Salem further described that PHEAA called him into a meeting on July 2, 2015,

> because he searched online for '[] Gojmerac' and viewed images of guns within the month of June, he was automatically flagged as threatening. The meeting was cordial and seemingly elucidated the situation.

> Later on July 2nd, 2015, at the end of the work day, [Salem] was escorted to a meeting with Stephanie Galloway, Department Director, and [Gojmerac] and informed he was terminated due to a violation of the [Policy], '[s]pecifically, you have used PHEAA internet resources for personal use in an inappropriate manner, which violates the [Policy].' [Salem] requested more information twice, and was told that '[n]o further information will be provided at this time.'

> After administrative actions, [Salem] finally arrived at Step 3 of the grievance procedure, meeting with Agency Head. In this meeting, he finally learned of why he was terminated: He viewed images of guns which management deemed obscene and had excessive [i]nternet [u]sage because of the amount of page hits. [Salem] objected,

5

noting that the [Policy] was not violated based on the evidence provided.

C.R. at 6-7. Salem argued in the Charge that, under the circumstances,

> PHEAA was clearly motivated by [Salem's] invocation of his . . . collectively bargained-for rights and reporting of violations. That the termination happened the day after [Salem] reiterated his disputing of the promotions, [and he] stated that he was unsure of the [Policy] and that he was disputing the March [f]inal [w]arning[,] shows a causal connection between the protected activity and the retaliatory action and that the reasoning provided w[as] pretextual.

C.R. at 7.

In the instant matter, the Board did not reach the merits of Salem's claims.[6] Rather, based upon the Charge and the documents Salem appended thereto, the Secretary ruled:

> Section 1505 of PERA provides that no charge shall be entertained which relates to acts which occurred or statements which were made more than four months prior to the filing of the charge. A charge will be considered timely if it is filed within four months of when the charging party knew or should have known that an unfair practice was committed. *C[mty.] Coll[.] of Beaver C[nty.] Soc[']y of Faculty, PSEA/NEA v. Beaver C[nty.] C[mty.] Coll[.]*, 35 PPER 24 (Final Order, 2004). **You allege that PHEAA discharged you on July 2, 2015. Based on that date, your Charge is untimely because it was filed more than four months after you were discharged by PHEAA**. Accordingly, no complaint will be issued and your Charge is dismissed as untimely.

C.R. at 23 (emphasis added). On appeal, the Board held:

> After a thorough review of the exceptions and all matters of record, [**Salem's**] **August 9, 2016** [**Charge**] **was untimely**

---

[6] "The merits of the case were examined only to the extent necessary to determine whether the statute of limitations should be tolled." *Thomas*, 483 A.2d at 1018.

6

**filed more than four months from when [Salem] knew or should have known of his alleged protected activity and subsequent termination of his employment on July 2, 2015**. . . . Accordingly, the Secretary did not err in declining to issue a complaint, and dismissing the [Charge].

Final Order at 3 (C.R. at 35).

"In cases involving other administrative agencies, [this Court] ha[s] held that the timeliness of an appeal goes to subject matter jurisdiction. [This Court] regard[s] the statute of limitations in Section 1505 [of PERA] in the same manner." *Thomas*, 483 A.2d at 1017-18 (citations omitted). Therefore, "the failure to timely appeal [from the Board's] action is a jurisdictional defect." *J.C. v. Dep't of Pub. Welfare,* 720 A.2d 193, 197 (Pa. Cmwlth. 1998); *see also Donatucci v. Pa. Labor Relations Bd.*, 547 A.2d 857, 859 (Pa. Cmwlth. 1988). Accordingly, in this action, the Board had the statutory authority to act until November 2, 2015 (*i.e.*, four months from July 2, 2015), unless Salem could establish that he had no reason before then to believe that an unfair labor practice had occurred. *Lancaster Cnty*; *Thomas*.

This Court agrees with the Board that Salem's claimed ignorance of any potential unfair labor practice until April 26, 2016 is not supported by this record, and the filing of his charge was not tolled by his grievance filings. Based on Salem's Charge, it is clear that, despite having received a final warning about improper usage of PHEAA computers in March 2015, Salem "searched online for '[] Gojmerac' and viewed images of guns . . . [in June 2015, and] was automatically flagged as threatening." C.R. at 6. Salem admitted in the Charge that his June 2015 computer use was discussed at the July 2, 2015 meeting and, despite his understanding that "[t]he meeting was cordial and seemingly elucidated the situation," his employment was terminated that same day. C.R. at 6. In addition, PHEAA's July 2, 2015 termination letter specified that Salem's discharge was due to a Policy violation arising from his personal, inappropriate use of PHEAA's internet resources.

7

Based upon Salem's allegations in the Charge, the Board properly concluded that Salem "had sufficient knowledge of the material facts necessary for filing [] an unfair [labor] practice charge with the Board as of July 2, 2015." Final Order at 2 (C.R. at 34); *see also Lancaster Cnty.* To be timely under Section 1505 of PERA, the Charge had to be filed on or about November 2, 2015. Because Salem did not file the Charge until August 9, 2016, it was 9 months overdue. Accordingly, the Board did not abuse its discretion by upholding the Secretary's decision dismissing the Charge as untimely.

Salem further argues that because he did not know the reason he was discharged until after the filing of his grievances, the grievance filings tolled the statute of limitations for the filing of his Charge. However, Salem produced no legal support for his claim. Notwithstanding, the filing of a grievance pursuant to a collective bargaining agreement does not toll the statute of limitations for the filing of an unfair labor practice charge under PERA. *Taylor v. Pa. Labor Relations Bd.* (Pa. Cmwlth. No. 92 C.D. 1983, filed April 3, 1984).[7] Finally, there is no record evidence to support Salem's estoppel argument because "[t]here exists no competent evidence that [PHEAA] engaged in any affirmative fraud, deception or concealment of fact." *Fraternal Order of Police*, 696 A.2d at 876.

Based on the foregoing, we affirm the Board's Final Order.

---

[7] We acknowledge that *Taylor* is an unreported memorandum opinion. Accordingly, *Taylor* is cited herein solely for its persuasive value.

Salem's claim that Grievance No. 90-1224-51607 tolled the four-month limitations period incorrectly

> assumes that the grievance proceedings and the unfair labor practice charge involved the same claim against [PHEAA]. They did not. The grievance proceedings questioned generally whether or not [PHEAA] had just cause to discharge [him], while the unfair labor practice [C]harge was instituted on the basis that the discharge was in retaliation for filing the grievance initially attacking the discharge.

*Taylor*, slip op. at 6.

8

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Quentin Salem,                              :
                              Petitioner    :
                                            :
                    v.                      :
                                            :
Pennsylvania Labor Relations Board,         :    No. 1930 C.D. 2016
                              Respondent     :

PER CURIAM

### O R D E R

AND NOW, this 8th day of August, 2017, the Pennsylvania Labor Relations Board's November 15, 2016 Final Order is affirmed.